Valdean MAHONEY and Philip S. Culcasi, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

CROCKER NATIONAL BANK, a National Banking Association, Defendant.

No. C–82–4178 RPA.

United States District Court, N.D. California.

Sept. 2, 1983.

Guy T. Saperstein, Farnsworth, Saperstein & Brand, Oakland, Cal., for plaintiffs.

M. Kirby or C. Wilcox, Morrison & Foerster, San Francisco, Cal., for defendant.

## OPINION AND ORDER

AGUILAR, District Judge.

This action is before the Court on motions for partial summary judgment brought by both parties.

### Background

Plaintiffs, Valdean Mahoney and Philip S. Culcasi, brought this action on behalf of themselves and a class of all other persons similarly situated pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* Plaintiffs seek damages and injunctive relief on account of defendant Crocker National Bank's alleged acts of age discrimination.

Named plaintiffs claim that each were discharged from their positions with Crocker solely on account of their age. Mahoney was fifty-three years old when she was discharged from her position as assistant branch manager at Crocker's Ukiah branch. Culcasi was forty-eight when he was discharged from his position as branch lending manager, a position to which he had recently been demoted, at Crocker's Vallejo branch. Culcasi had previously been the senior commercial lending officer at the Vallejo branch, and prior to that had been vice president and manager of Crocker's Fruitvale branch. For both of his positions at the Vallejo branch Culcasi retained his vice president status. Each contend that they were performing their duties in a competent and loyal fashion before they were discharged and that they were each replaced by persons under the age of forty.

Named plaintiffs represent a class defined as:

> All Crocker branch management personnel in Crocker District II who were demoted, discharged, forced into retirement, or otherwise discriminated against with respect to the terms, conditions, or privileges of their employment because of their age, and who were over 40 years of age at the time of the discrimination. Such branch management personnel include, without limitation, branch managers, assistant branch managers, branch commercial lending managers, branch operations managers, business banking center managers, and commercial lenders and employees with similar duties in Crocker District II.

Named plaintiffs also bring pendent state law claims against Crocker for the alleged acts of discrimination taken against them. Specifically, Mahoney and Culcasi bring claims for relief for: breach of implied obligations of their employment contracts; breach of the covenant of good faith and fair dealing; wrongful discharge; and, age discrimination in violation of California Government Code section 12941. Culcasi also asserts claims for illegal retaliation in violation of federal and state law, and negligent infliction of emotional distress.

### The Current Motions Before the Court

Mahoney as assistant manager and Culcasi as vice president and manager and then

lending manager, were considered by Crocker to be "officers" of Crocker. Accordingly, in its answer to plaintiffs' complaints, Crocker asserted as its Tenth Affirmative Defense that named plaintiffs' state law claims for breach of the employment contracts, breach of the covenant of good faith and fair dealing, and wrongful discharge, were barred by that portion of the National Bank Act which permits banks to dismiss its officers "at pleasure." 12 U.S.C. § 24, Fifth.

Crocker now moves for summary partial judgment as to these three claims for relief based upon the National Bank Act defense. Plaintiffs bring a cross motion for summary judgment with respect to defendant's affirmative defense, contending that the National Bank Act does not bar these state law claims.

By its motion for partial summary judgment Crocker also asserts that plaintiffs' pendent claim for wrongful discharge is preempted by the California Fair Employment and Housing Act, which constitutes the exclusive remedy in California for age discrimination.

### The National Bank Act Defense

■ 12 U.S.C. section 24, Fifth of the National Bank Act provides:

> ... a national banking association ... shall have power—to elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty therefor, *dismiss such officers or any of them at pleasure,* and appoint others to fill their places.
>
> (Emphasis supplied.)

By virtue of this provision of the National Bank Act, a board of directors may dismiss an officer prior to the expiration of his or her term of employment without incurring liability for breach of contract or wrongful discharge. *See, e.g., Kozlowsky v. Westminster Nat'l. Bank,* 6 Cal.App.3d 593, 596, 86 Cal.Rptr. 52 (1970); *Kemper v. Worces-*

*ter,* 106 Ill.App.3d 121, 62 Ill.Dec. 29, 31, 435 N.E.2d 827, 829 (1982).

Plaintiffs contend that the National Bank Act does not preclude any of their claims because the phrase "other officers" as used in section 24, Fifth must be construed to apply only to senior officers, and not to the lower echelon officers, such as Mahoney and Culcasi, that now exist in modern branch banking. Plaintiffs further contend that even if the phrase "other officers" is interpreted to include officers such as plaintiffs, defendants cannot invoke the dismissal at pleasure defense of the National Bank Act because plaintiffs were not appointed and discharged in the manner required to gain the protection from liability afforded by the Act for wrongful terminations.

If plaintiffs' assertions are correct that they were not hired and fired as required for the National Bank Act to preclude their claims, the Court need not resolve the more difficult issue, involving a significant question of policy, of whether the dismissal at pleasure provision of the Act should be applied to the types of officers present in modern day branch banking. Therefore, the question of the procedure used in appointing and dismissing plaintiffs, and the effect of the procedures used on Crocker's ability to invoke the dismissal at pleasure defense, will be discussed first by the Court.

### The Appointments

Plaintiffs contend that they were not appointed to their positions as officers in the manner required by the National Bank Act. Therefore, plaintiffs cannot be considered officers and therefore are not subject to the dismissal at pleasure provision of the Act applicable to the dismissal of officers.

Crocker's procedure for appointing officers is set forth in Article VI, § 1 of its bylaws:[1]

> Senior officers shall be appointed by the Board of Directors and other officers may be appointed by the Board of Directors or the Chairman of the Board or by such

---

1. Bylaws of Crocker National Bank (hereinafter referred to as "bylaws").

person or persons as the Board may designate.[2]

Mahoney was appointed to the corporate officer position of Assistant Manager on April 1, 1978. The appointment was approved by William L. Morris, Vice Chairman of Crocker, who at that time was acting Chairman of the Board of Directors. Morris Declaration at 1, 4.

Culcasi was first appointed to the corporate officer position of Assistant Vice President and Manager of the Telegraph-Russell Branch of Crocker on August 12, 1969. His appointment was approved by Chairman of the Board Emmet D. Solomon. Ellingson Declaration at 2. When Culcasi was appointed Vice President & Manager of the Fruitvale Branch, Chairman of the Board Thomas R. Wilcox approved the appointment. Id.[3]

Section 24, Fifth, as quoted earlier, empowers the board of directors to appoint the bank's officers. However, section 24, Sixth provides the board with the power to enact bylaws regulating the manner in which officers shall be appointed. 18 U.S.C. § 24, Sixth. Crocker enacted such bylaws, and followed them in making the appointments of Mahoney and Culcasi to positions as officers of Crocker.

■ Thus, the evidence before the Court clearly shows that plaintiffs were appointed in accordance with Crocker's bylaws and in accordance with section 24, Fifth and Sixth. Plaintiffs therefore were officers of Crocker and so subject to the provisions of the National Bank Act regarding officers.

*The Discharges*

Plaintiffs contend that they were not dismissed from their positions as officers in the manner required by the National Bank Act. Therefore, the dismissal at pleasure provision of the Act cannot be applied to their dismissals.

With respect to the procedure for dismissals, Crocker's bylaws provide:

The Chairman of the Board, or such person or persons as he may designate, may . . . remove officers and employees of the association, other than senior officers. Bylaws, Art. IV, § 3.[4]

■ The evidence before the Court establishes that the highest level officer to approve of Mahoney's discharge was a senior executive president. Seligman Declaration, Exhibit 5. The highest level officer to approve of Culcasi's discharge was an executive vice president. Id. Crocker has presented no evidence to indicate that the Chairman of the Board designated these officials as empowered to discharge branch officers.

As neither the Chairman of the Board nor a person designated by the Chairman removed plaintiffs from their positions as officers, Crocker did not comply with its bylaws for removal of officers in discharging plaintiffs. Plaintiffs were not discharged by persons authorized by Crocker to remove officers.

*The Effect of These Dismissals on the National Bank Act Defense*

The dismissal at pleasure provision of the National Bank Act, section 24, Fifth, specifically provides that the board of directors may dismiss officers at pleasure. Therefore, Congress has specifically set forth the entity that may dismiss officers at pleasure.

However, in light of the powers given to boards of directors by Congress in the National Bank Act, the Court cannot interpret the language of the dismissal at pleasure provision as meaning that the dismissal at pleasure defense can be asserted *only* when the board of directors itself makes the dismissal. Section 24, Sixth of the National Bank Act, 12 U.S.C. § 24, Sixth, provides that the board of directors of a national

**2.** There is no dispute between the parties that plaintiffs are considered to be "other officers," as opposed to "senior officers."

**3.** As noted, though Culcasi was transferred to the Vallejo Branch as senior commercial lender

and later demoted to branch lending manager, he retained the corporate title of vice president. *Id.*

**4.** Again, plaintiffs were not "senior officers."

bank may prescribe bylaws regulating the manner in which "its general business [shall be] conducted, and the privileges granted to it by law exercised and enjoyed." In addition, 12 C.R.F. section 7.4425 states that "the board of directors of a national bank may not delegate responsibility but may assign the performance thereof." Thus, a board of directors may assign performance of the job of dismissing an officer at pleasure to other persons, though the board retains responsibility for the dismissals made by those persons.

Congress therefore has empowered boards of directors of national banks and the persons to whom the boards of directors assign the performance of making dismissals with the right to dismiss officers at pleasure. Where dismissals are made by the entities or persons empowered to dismiss at pleasure, the bank may invoke the dismissal at pleasure defense to lawsuits arising from the dismissals.

But where a dismissal has been made by neither the board of directors nor by a person duly authorized by the board through the bylaws to make dismissals, there is no Congressional authorization for that dismissal to be at pleasure.[5] Thus, the dismissal at pleasure defense is not available with respect to such a dismissal.

Plaintiffs Mahoney and Culcasi were not dismissed by the Board of Directors of Crocker, nor by the Chairman of the Board, nor by any person designated by the Chairman of the Board to dismiss officers. Mahoney and Culcasi were therefore not dismissed by the Board of Directors or by a person duly authorized by the bylaws to dismiss them. Accordingly, Crocker did not comply with the requirements of the National Bank Act for dismissing officers at pleasure since a person or entity contemplated by Congress as being empowered to dismiss at pleasure did not in fact dismiss Mahoney or Culcasi. Thus, Crocker cannot assert as a defense the dismissal at pleasure provision of section 24, Fifth of the National Bank Act.

Crocker argues that as long as the National Bank Act applies to plaintiffs as officers, the manner in which they were dismissed is irrelevant as "the manner of plaintiffs' termination cannot undo the fact of federal preemption." Defendant's Reply to Plaintiffs' Supplemental Memorandum at 9, fn. 2. Congressional authorization of dismissals at pleasure under the Act cannot be construed so broadly. Congress specifically states that boards of directors have the power to dismiss officers at pleasure. This Court has interpreted this authorization of power to apply to boards of directors and to those persons to whom the boards assign dismissal powers. A dismissal at pleasure must be accomplished in the manner in which Congress empowers that it can be made. When Congress gives power, the proper exercise of that power is bound by any limitations set forth by the Congress, and here Congress has so limited the exercise of that power. Section 24, Fifth and Sixth must be read together as authorizing dismissals of officers at pleasure *only* by boards of directors and those to whom the boards assign the performance of the dismissal of officers. Congress did not authorize that any others could dismiss officers at pleasure.

Unfairness would result if Crocker were permitted to maintain that plaintiffs are officers within the meaning of the termination at pleasure provision of the National Bank Act, but at the same time not comply with the Act's requirements for terminating officers at pleasure. Congress gave national banks certain immunity from liability for their dismissals of officers. In exchange for this immunity, Congress provides the officers certain protections with respect to the manner in which they are dismissed, *i.e.*, that they are dismissed by a person authorized to dismiss them. By this procedure the dismissal, for which the officer is provided no remedy because it may be made at pleasure, should receive proper consideration because it is made by the board of directors or a person specifically authorized to dismiss officers.

5. *See, e.g., Kozlowsky v. Westminster Nat'l. Bank,* 6 Cal.App.3d at 600, 86 Cal.Rptr. 52.

In conclusion, then, the "at pleasure" defense to dismissals under the National Bank Act can be invoked only where the procedure for dismissing officers, as set forth by Congress, and therefore also as set forth in the bylaws of the bank,[6] are followed. Thus, the defense cannot be invoked by Crocker in the present case.

As the Court has determined that Crocker cannot invoke the National Bank Act dismissal at pleasure provision to preclude plaintiffs' claims for relief for breach of the employment contracts, breach of the covenant of good faith and fair dealing, and wrongful discharge, it need not address plaintiffs' contention that the dismissal at pleasure provision should not apply to the lower echelon officers, such as plaintiffs, that are prevalent in modern day branch banking.

In light of the above, plaintiffs' motion for partial summary judgment as to Crocker's Tenth Affirmative Defense must be granted, and Crocker's motion for partial summary judgment, to the extent it pertains to the National Bank Act defense, must be denied.[7]

*Preemption by the California Fair Employment and Housing Act*

In their complaint plaintiffs assert a claim for relief based upon the common law tort of wrongful discharge. Plaintiffs allege that their discharge "resulted from actions by defendant Crocker, which violated fundamental principles and considerations of public policy including making employment decisions on the basis of age." Complaint at 10. Crocker contends that the claim for relief for wrongful discharge must be dismissed as preempted by the remedy for age discrimination available under the California Fair Employment and Housing Act, Cal.Govt.Code § 12901 *et seq.* (West 1980) (hereinafter referred to as "CFEHA").[8] Specifically, Crocker contends that the remedies provided by CFEHA preempt the common law wrongful discharge claim because there was no public policy against age discrimination prior to enactment of CFEHA. Thus, by including a prohibition against age discrimination in the CFEHA, the legislature intended to occupy the field, making the remedy available under the CFEHA an exclusive one. The question before the Court then, is whether an action under the CFEHA is the exclusive remedy in California for age discrimination, thus preempting plaintiffs' common law tort claim for wrongful discharge on account of age.

The Court has not found a reported case which directly decides the issue of the exclusiveness of the remedy provided by the CFEHA. Thus, it must rely on general preemption of remedies principles.

■ The common law tort of wrongful discharge is recognized in California where a discharge clearly violates an express statutory provision, or where the discharge contravenes a firmly established principle of public policy. *Tameny v. Atlantic Richfield,* 27 Cal.3d 167, 172–78, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980). In *Tameny,* the court allowed an employee to bring an action for wrongful discharge against an employer who discharged the employee in retaliation for the employee's refusal to participate in a price-fixing scheme. *Id.* In another example, the court in *Hentzel v. Singer Co.,* 138 Cal.App.3d 290, 304, 188 Cal.Rptr. 159 (1982) allowed a wrongful discharge action where an employee was fired for efforts regarding the health and safety

---

6. Bylaws which do not conflict with federal or state law are the law of the bank. *McKee v. First Nat'l. Bank of San Diego,* 265 F.Supp. 1, 5 (S.D.Cal.1967). Thus, in dismissing plaintiffs from their positions as officers, Crocker failed to follow its own laws. This is yet a further reason that the Court cannot permit Crocker to assert the dismissal at pleasure defense to plaintiffs' discharges.

7. The Court notes that the class action aspect of plaintiffs' complaint applies only to the federal claim for relief for age discrimination. As Crocker has never asserted that section 24, Fifth is a defense to this claim, the question of the appointment and dismissal procedures as to any persons who "opt-in" to the class will not be relevant or need to be resolved by the Court.

8. Plaintiffs have also pled a claim for relief for age discrimination in violation of CFEHA.

of the workplace. In the present case, plaintiffs assert that by its discharge of plaintiffs solely on account of age, Crocker violated the public policy against age discrimination.

By the CFEHA, the legislature of California in 1980 statutorily declared as "the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgment on account of . . . age." Cal.Govt.Code § 12920. Specifically, the CFEHA provides that "it is an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote any individual over the age of 40 on the ground of age . . ." Cal.Govt.Code § 12941.

The Legislature also announced in its declaration of policy that "[I]t is the purpose of this part to provide effective remedies which will eliminate such discriminatory practices." Cal.Govt.Code § 12920. Thus, under the CFEHA, where a person believes that he or she has been discriminated against on account of age, a complaint is filed with the Department of Fair Employment and Housing, which then investigates the complaint. Cal.Govt.Code §§ 12960, 12963. The Department is provided with various investigative powers. Cal.Govt. Code §§ 12963.1 through 12963.5. If the Department determines after its investigation that the complaint is valid, it must endeavor to eliminate the unlawful employment practice complained of by conference, conciliation, and persuasion. Cal.Govt.Code § 12963.7. If conference, conciliation or persuasion are not successful in eliminating the unlawful employment practice, a written accusation may be issued in the name of the Department, and the Fair Employment and Housing Commission then holds a hearing on the accusation and determines the issues raised by the accusation. Cal.Govt. Code §§ 12965(a), 12967. However, if the department decides not to issue an accusation or does not issue an accusation within

150 days after the filing of a complaint, the complaining party may bring a civil action pursuant to the CFEHA against the employer. Cal.Govt.Code § 12965(b).[9]

Since 1980, California has had a specific statutory recognition of a right not to be discriminated against on account of age, and specific remedies for violation of that right. Plaintiffs contend that a public policy against age discrimination was in existence before the 1980 actions of the California legislature.

■ Where a right is established at common law or by statute, before a new statutory remedy is created, the statutory remedy will generally be considered "merely cumulative, and the older remedy may be pursued at the plaintiff's election." 2 Witkin, California Procedure, § 8, p. 886 (2d Ed.1970). However, where a right not existing at common law is created by statute, and a statutory remedy for its violation is provided, the statutory remedy is exclusive and no other remedy may be pursued. Witkin, *supra*, § 7, p. 885; *and see Orloff v. Los Angeles Turf Club,* 30 Cal.2d 110, 112, 180 P.2d 321 (1947); *Gold v. Los Angeles Democratic League,* 49 Cal.App.3d 365, 372, 373, 122 Cal.Rptr. 732 (1975). Where the Legislature has provided a comprehensive remedial scheme, there is a strong indication that the legislature intended the remedy to be exclusive. *Id.; and see Hentzel v. Singer Co.,* 138 Cal.App.3d at 303, n. 9, 188 Cal.Rptr. 159. Thus, in determining whether the CFEHA remedy against age discrimination is an exclusive one, the relevant considerations are the existence of a right not to be discriminated against on account of age found in either the statutory or common law pre-dating the CFEHA, and the extent to which the CFEHA remedy appears to have been intended by the Legislature to be exclusive.

■ As to the first consideration, plaintiffs have cited the Court to no case or statute, prior to the CFEHA, which recognized a right to be protected from age

9. Plaintiffs herein allege that they have exhausted their administrative remedies, Cal. Govt.Code § 12965(b), for purposes of their claim for relief under the CFEHA.

discrimination. Thus, the Court cannot find that there was a firmly established principle of public policy prohibiting age discrimination prior to the CFEHA declaration condemning age discrimination in 1980. In contrast to the situation presented by this case, in *Hentzel v. Singer,* where the court found the remedial provisions of the Occupational Safety and Health Act (OSHA) not to foreclose an action for wrongful discharge, the court detailed the history of the public policy against health and safety hazards in the workplace and found that such a policy predated OSHA's prohibitions. *Hentzel v. Singer,* 138 Cal. App.3d at 296–304, 188 Cal.Rptr. 159.

As to the second consideration, it clearly appears that the Legislature intended that the remedy for age discrimination created by the CFEHA be exclusive. The CFEHA remedy is specific and detailed, thus indicating its exclusive nature. Witkin, *supra* at 885. Furthermore, as noted earlier, the Legislature specially stated that the CFEHA was intended to provide a remedy for the discriminations it prohibited. This is a strong indication that the Legislature intended the remedy it created for age discrimination under the CFEHA to be exclusive. And as additional support for this conclusion, the California Supreme Court in *Gay Law Students Ass'n v. Pacific Tel. & Tel. Co.,* 24 Cal.3d 458, 490, 156 Cal.Rptr. 14, 595 P.2d 592 (1980), though the court did not address the precise question of preemption, has stated:

> ". . . the prohibitions on employment discrimination contained in the FETA are in no sense declaratory of preexisting common law doctrine but rather include areas and subject matters of legislative innovation, creating new limitations on an employer's right to hire, promote or discharge its employees."

Plaintiffs assert that the California Supreme Court rejected the exclusive remedy rule of statutory construction with respect to the CFEHA in *Commodore Home Systems, Inc. v. Superior Court of San Bernardino County,* 32 Cal.3d 211, 185 Cal.Rptr. 270, 649 P.2d 912 (1982). However, plain-

tiffs' interpretation of this case is incorrect. The California Supreme Court there addressed the question of what types of judicial remedies were available in a civil action pursuant to the CFEHA. The court held that all relief generally available in noncontractual actions, including punitive damages, is available. The court reasoned that in a civil action plaintiff is not confined to judicial relief consisting of only statutory remedies because the CFEHA does not identify the remedies available in the civil action. *Id.* at 221, 185 Cal.Rptr. 270, 649 P.2d 912. Thus, the *Commodore Home Systems* did not reject the exclusive remedy rule of statutory construction, but merely found it inapplicable to the situation where judicial relief in a civil action was left unspecified by the Legislature. The Court simply did not address the question of whether the CFEHA preempts common law actions for discrimination.

As plaintiffs have been unable to establish that a firmly established principle of public policy prohibiting age discrimination was recognized prior to the CFEHA's prohibition against age discrimination in 1980, and as the elaborate remedy provided by Congress in the CFEHA, and the language of declaration of policy by the Legislature in the CFEHA, indicate that the CFEHA remedy was to be an exclusive one, the Court holds that plaintiffs' claim for relief for wrongful discharge on account of age is preempted by the remedies available, and as asserted by plaintiffs, under the California Fair Employment and Housing Act. Under the ruling in *Commodore Home Systems,* plaintiffs will be entitled to the same relief that would have been available to them under their wrongful discharge claim.

*Class Cut-Off Date*

█ Crocker has also asked that the Court set a cut-off date for class members to "opt-in" to the federal class action for age discrimination. Defendant seeks a class cut-off date of seven days after the entry of the Court's order on the above-discussed motions. Plaintiffs seek a date of 45 days before the trial date.

The Court finds that a class cut-off date of 90 days before the date set for trial is reasonable. This date is not set so that plaintiffs can seek discovery for the purpose of ascertaining and notifying potential class members, as such is prohibited, *Partlow v. Jewish Orphans' Home of Southern California, Inc.,* 645 F.2d 757, 759 (9th Cir.1981); *Kinney Shoe v. Vorhes,* 564 F.2d 859, 863 (9th Cir.1977). This date will allow sufficient time for potential class members to learn of the case, and to take the necessary procedures to "opt-in" to it. If Crocker finds that after the date for "opting-in" has passed that it will be unprepared to go to trial with respect to a late-entering class member, it can then move for a continuance of the trial date. The Court will seriously consider such a motion upon sufficient documentation of possible prejudice to Crocker.

*Orders*

Good cause appearing therefor, IT IS HEREBY ORDERED that plaintiffs' motion for partial summary judgment as to Crocker's Tenth Affirmative Defense is GRANTED.

IT IS FURTHER ORDERED that Crocker's motion for partial summary judgment is granted as to plaintiffs' claim for relief for wrongful discharge, and denied in all other respects.

All persons seeking to "opt-in" to the federal class action must do so no later than 90 days before the date set for trial of this action. A further status conference shall be held on October 13, 1983, at 9:15 a.m. At that time counsel should be prepared to discuss an appropriate trial, and therefore a class cut-off, date.

IT IS SO ORDERED.