**Judy S. GUEVARA, Plaintiff,**

v.

**K–MART CORPORATION, Defendant.**

**Civ. A. No. 2:85–0268.**

United States District Court,
S.D. West Virginia,
Charleston Division.

March 13, 1986.

Richard L. Withers, Hickok & Withers, Charleston, W.Va., for plaintiff.

David D. Johnson and Larry W. Blalock, Jackson, Kelly, Holt & O'Farrell, Charleston, W.Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending before the Court is the motion of the Defendant for summary judgment. A memorandum of law was filed with the motion. Although the Pretrial Procedures and Final Scheduling Order entered on April 3, 1985, directed counsel to submit memoranda in opposition to a dispositive motion within fourteen days of the filing date, the Plaintiff has not responded. The Court must, therefore, consider this motion without the assistance of the Plaintiff's arguments.

### I. *Background*

The factual context of this case is not complicated, and a detailed recitation of the relevant facts is not necessary for the purposes of this motion.

Judy Guevara was employed by K–Mart from May 19, 1980, until her discharge on October 24, 1983. She contends that during her tenure with the store she was harrassed from time to time by an assistant manager, Jerome Zuonkivich. In her deposition, Mrs. Guevara cites several instances where Zuonkivich attempted to humiliate or embarrass her. She claims that this course of harrassment began shortly after Zuonkivich discovered that Mrs. Guevara's husband was a Mexican-American. She blames discrimination based on national origin as the cause of her employment termination.[1]

After her discharge, Mrs. Guevara filed two identical charges of employment discrimination with the West Virginia Human Rights Commission. She alleged both race

---

1. The employer, K–Mart, contends that Mrs. Guevara was discharged because she abandoned her job, that is, that she left the store without permission during working hours.

and sex discrimination.[2] On June 25, 1984, the Commission issued a "determination" that K–Mart had not engaged in sex or race discrimination in discharging Mrs. Guevara. On July 13, 1984, the Commission issued a "right to sue letter" pursuant to the requirements of § 5–11–13(b) of the West Virginia Code.

Mrs. Guevara filed the instant action in January, 1985, in the Circuit Court of Kanawha County, West Virginia. K–Mart then removed the action to this Court on March 5, 1985. In her complaint, Mrs. Guevara alleged that she was harrassed because of her husband's national origin and that "[t]he pattern and practice of abuse and harrassment culminated in events which led to [her] constructive discharge." Instead of citing the West Virginia Human Rights Act and seeking the remedies provided therein, Mrs. Guevara accused K–Mart of an "abusive discharge" and of "outrageous conduct."

II. *Discussion*

K–Mart's motion for summary judgment is based on two somewhat related grounds. First, it asserts that once a party invokes the remedial procedures of the Human Rights Act, she is barred from asserting an unrelated cause of action. Second, K–Mart argues that the remedial scheme set forth in the Human Rights Act is exclusive, thus precluding victims of discrimination from pursuing a tort-based claim for abusive discharge. In that the second argument raises issues of greater moment, the Court addresses it first.

In *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978), the Supreme Court of Appeals of West Virginia recognized for the first time an exception to the well entrenched employment-at-will doctrine. *See, e.g., Wright v. Standard Ultramarine and Color Co.*, 141 W.Va. 368, 90 S.E.2d 459 (1955). The Plaintiff in *Harless* was an at-will bank employee who complained to his superiors about illegality in the bank operations.

For this gratituous honesty, he was discharged. He then brought an action against his employer on the theories of retaliatory or abusive discharge and outrageous conduct. The West Virginia Court sanctioned the use of the abusive discharge theory with the following language:

> "We conceive that the rule giving the employer the absolute right to discharge an at-will employee must be tempered by the further principle that where the employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by the discharge."

*Harless*, 162 W.Va. at 124, 246 S.E.2d at 275.

That Mrs. Guevara has brought a *Harless*-type action cannot be disputed. Indeed, a review of her complaint reveals that it is closely patterned after the *Harless* case. For instance, Mrs. Guevara is pursuing, as did the plaintiff in *Harless*, two legal theories: abusive discharge and outrageous conduct. Her pleading on the abusive discharge theory mirrors the holding of the *Harless* case: "Defendant corporation is guilty of an abusive discharge of plaintiff from employment in violation of substantial public policy." Also, Mrs. Guevara's laundry list of damage elements approximates that sought by the *Harless* plaintiff. Included within her *ad damnum* clause is a demand for punitive damages.

As the correctness of labeling this case as a *Harless* action is made apparent, a similar confidence develops in the conclusion that Mrs. Guevara consciously elected to ignore her remedies under the West Virginia Human Rights Act. Nowhere in her complaint does she cite the Act or the obligations it places upon employers. She makes no mention of exhausting the administrative process or of receiving a right to sue letter. Moreover, her requested elements of damage are more extensive than those available under the Act. For exam-

---

**2.** It is unclear why Mrs. Guevara filed her complaints with the Human Rights Commission under the categories of sex and race discrimina-

tion. In her deposition she expressly affirms that her grievance is based on national origin discrimination only.

ple, she seeks an award of punitive damages equal to the claimed amount of compensatory damages.

■ Although the complaint is somewhat opaque, the import of Mrs. Guevara's theory is that the prohibition of discrimination on the basis of national origin is a "clear and unequivocal public policy" as established by the West Virginia Legislature.[3] Hence, she implies that a violation of such a policy is a candidate for a *Harless*-type remedy. The difficulty with Mrs. Guevara's position, as strenuously argued by K–Mart, is that the West Virginia Legislature deemed it proper to establish a statutory remedy to address allegations of discrimination, the West Virginia Human Rights Act. *W.Va.Code*, § 5–11–1, *et seq.* Thus, the question is whether a victim of discrimination is limited to the remedy afforded by the statute or whether he or she may pursue a *Harless*-type action.

The West Virginia Human Rights Act was enacted by the Legislature in 1967. The *Harless* decision recognizing a public policy exception to the at-will doctrine did not come along until 1978. Hence, at the time of the adoption of the Act, a discrimination victim was not provided a remedy by state law, under a *Harless*-type action or otherwise. This latter fact is relevant to a principle of law recently restated by a California federal court: "[W]here a right not existing at common law is created by statute, and a statutory remedy for its violation is provided, the statutory remedy is exclusive and no other remedy may be pursued." *Mahoney v. Crocker National Bank*, 571 F.Supp. 287, 293 (N.D.Cal.1983).

The question before the *Mahoney* court was whether an action under the California Fair Employment and Housing Act was the exclusive remedy in California for age discrimination, "thus preempting plaintiff's common law tort claim for wrongful discharge on account of age." *Id.* at 292. The court held that the statutory remedy *was* exclusive. In so holding, the court took into account two considerations. First, it addressed whether the right not to be discriminated against existed prior to the enactment of the statute. In this instance, it did not.[4] Second, the *Mahoney* court considered whether it was the intent of the legislature to make the statutory remedy exclusive. Such intent can be inferred here from the comprehensive nature of the system implemented by the Legislature. As the *Mahoney* court concluded, "[w]here the Legislature has provided a comprehensive remedial scheme, there is a strong indication that the Legislature intended the remedy to be exclusive." *Id.* at 293.[5]

It is of special significance to note that in the same statutory scheme in which the Legislature identified an important public policy against discrimination, it also provided a remedy. The existence of a remedy procedure within the statute distinguishes this case from those instances in which the West Virginia Court has recognized an implied private cause of action under positive law. *See, e.g., Jenkins v. J.C. Penney Casualty Ins. Co.*, 280 S.E.2d 252 (W.Va. 1981); *Hurley v. Allied Chemical Corp.*, 164 W.Va. 268, 262 S.E.2d 757 (1980). In *Hurley* the court was concerned with a statute which prohibited the denial of civil

---

3. Discrimination based on national origin is one of the evils addressed by the West Virginia Human Rights Act. *W.Va.Code*, § 5–11–2 (1979).

4. The West Virginia Supreme Court acknowledged in *Shanholtz v. Monongahela Power Co.*, 165 W.Va. 305, 270 S.E.2d 178 (1980), that a common law remedy for a termination of at-will employment prior to *Harless* did not exist.

5. Other courts have reached decisions consistent with this opinion. *See Wolk v. Saks Fifth Avenue, Inc.*, 728 F.2d 221 (3d Cir.1984) (Pennsylvania Human Rights Act provides the exclusive remedy for sexual harrassment); *Bruffett v.*

*Warner Communications, Inc.*, 692 F.2d 910 (3d Cir.1982); *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Chekey v. BTR Realty, Inc.*, 575 F.Supp. 715 (D.Md.1983) ("Maryland courts have not recognized an abusive discharge cause of action when there exists a separate statutory remedy providing an exception to the terminable at-will doctrine"); *McCluney v. Jos. Schlitz Brewing Co.*, 489 F.Supp. 24 (E.D.Wis.1980); *Parets v. Eaton Corporation*, 479 F.Supp. 512 (E.D.Mich.1979).

rights to a person who had received mental health services. *W.Va.Code*, § 27–5–9(a) (1980). In *Jenkins*, the statute in question prohibited "unfair settlement practices" by insurance companies. *W.Va.Code*, § 33–11–4 (1982). In neither instance did the statute expressly provide a remedy for a violation of its terms. The West Virginia court, however, borrowing analysis from *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), fashioned a four-factor test to find that an implied private cause of action existed to redress a statutory violation. *Hurley*, 164 W.Va. at 278, 262 S.E.2d at 763 (setting forth a four-factor test). The Court noted in *Hurley* that without the implied cause of action there was an "absence of any other method of enforcing the declared right." *Id.* at 280, 262 S.E.2d at 764.

The statutory scheme created by the West Virginia Human Rights Act is markedly different from the statutes involved in *Hurley* and *Jenkins*. It *expressly* provides a remedy. Hence, any suggestion that the Act carries an implied cause of action is invalid.

The recently decided case of *Price v. Boone County Ambulance Authority*, 337 S.E.2d 913 (W.Va.1985), does not change the Court's conclusion that a *Harless*-type action may not be substituted for an action under the West Virginia Human Rights Act. In *Price* the plaintiff filed suit in a West Virginia Circuit Court claiming race discrimination. The defendant moved to dismiss arguing that the plaintiff had not exhausted his administrative remedies provided under the Act. The West Virginia Court held that a plaintiff could choose whether to file a charge with the Human Rights Commission or initiate an action in circuit court. Significantly, however, the court held that the action was still one brought under the Act. In this vein, it held that the remedies available were those provided by the Act. *Id.* at 916. So, even though the *Price* decision allows a party to initiate an action without exhausting administrative remedies, it does not sanction

a suit wholly separate and apart from the statute. As mentioned, the action in *Price* was brought under the statute. The instant action is not. The concept of exclusivity which limits a litigant to a statutorily inspired action survives *Price*.

Furthermore, the *Price* decision does not speak to the contention that once a discrimination victim chooses an administrative route, she is barred from bringing an action outside the statute. This is K–Mart's other argument.

This second argument of K–Mart is based on the language of *W.Va.Code*, § 5–11–13(a). That section of the Human Rights Act provides in pertinent part as follows:

"[A]s to acts declared unlawful by section nine [§ 5–11–9] of this Article the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned."

K–Mart argues that because Mrs. Guevara "invoked" the administrative procedure, she is now locked into the statutory procedures. The Court, however, believes this section, read carefully, indicates a legislative intent to prohibit other civil actions while a party is involved in the administrative process. Such a reading is consistent with the *Price* holding that a party may initiate a direct civil action under the Act or take the administrative route. "These two avenues," noted the *Price* court, "are, of course, mutually exclusive, as § 5–11–13(a) makes clear." *Price*, 337 S.E.2d at 916.

■ There is language in Section 13 to the effect that actions are filed "under this section." This phraseology, however, supports the other argument of K–Mart—and the holding of this Court—that a victim of discrimination prohibited by the West Virginia Human Rights Act is limited to a suit under that statute and may not prosecute a so-called *Harless*-type action.[6]

6. For the same reasons, the Plaintiff's other the- ory, "outrageous conduct," is also subject to this

### III. *Conclusion*

Accordingly, the Court concludes that Mrs. Guevara's cause of action, brought as a *Harless*-type action, is not cognizable under West Virginia law. This Court being unable to create a new cause of action, K–Mart's motion for summary judgment is granted.