No. 89-257

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA, ex rel., FIRST
BANK SYSTEM, FIRST BANK WEST GREAT
FALLS, and JOHN REICHEL,

        Relators,

   -vs-

THE DISTRICT COURT OF THE EIGHTH
JUDICIAL DISTRICT OF THE STATE OF
MONTANA, IN AND FOR THE COUNTY OF
CASCADE, THE HONORABLE NAT ALLEN,
Presiding Judge, and ROBERT M.
PANCICH,

        Respondents.

FILED

'89 NOV 28 AM 10 59

ED SMITH, CLERK
MONTANA SUPREME COURT

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Relators:

        Stephen D. Bell & Keith Strong; Dorsey & Whitney,
        Billings, Montana

    For Respondent:

        Ralph L. Herriott, Billings, Montana
        Walter M. Hennessey, Butte, Montana
        William L. Baillie, Great Falls, Montana
        Gene B. Daly, Helena, Montana

Submitted: September 5, 1989
Decided: November 28, 1989

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Relators First Bank System, First Bank West Great Falls, and John Reichel seek a writ of supervisory control from this Court following an order entered in the District Court for the Eighth Judicial District, Cascade County. In exercising our power of supervisory control, we vacate the lower court's order and remand for further proceedings.

The issues presented for our review are:

1. Did the District Court err in granting summary judgment in favor of plaintiff on the issue of liability?

2. Is supervisory control appropriate when the District Court granted summary judgment despite the presence of numerous factual issues?

Relators are the named defendants in a civil action brought by Robert Pancich, a former employee of First Bank West Great Falls. First Bank System is the parent corporation of First Bank West, and John Reichel was the Managing Director of the Western Montana Region of First Bank System at the time pertinent to this lawsuit. Mr. Reichel had also been elected a member of First Bank West's Board of Directors.

The incident giving rise to the present controversy occurred in 1983. In that year the Office of the Comptroller of the Currency (OCC) investigated First Bank West Great Falls and determined that it was engaged in "unsafe and unsound" banking practices. An affidavit by Mr. Reichel states that the deficiencies existing in the bank at that time included "ineffectiveness of some existing management personnel, high operating expenses, financial imbalance, unnecessary expenses, and inefficient use of resources." After the report by the OCC, on August 12, 1983, Mr. Reichel terminated Mr. Pancich's employment as president of the bank.

Prior to termination, Mr. Reichel contacted four members of the bank board, recommending that Mr. Pancich be terminated. Six days later, on August 18, 1983, during a special meeting of the board of directors, a new president was elected. During a regular meeting of the board, on September 15, 1983, the board unanimously accepted a letter of resignation from Mr. Pancich.

The affidavit by Mr. Reichel states that of the bank's board of directors, nine members were eligible to vote on decisions involving employment termination, one of whom was himself. Affidavits by the four members whom Mr. Reichel contacted state that prior to the August 12 termination Mr. Reichel discussed with them the need for a new president because of the Bank's serious financial setbacks. The affidavit of each of these four members states, "I concluded and agreed that Robert M. Pancich should be terminated from his employment at the Bank." Affidavits by three other members of the board state that prior to the termination, each of these three individuals had formed the opinion that the bank needed new leadership. All nine members of the board state by affidavit that on August 18, 1983, each attended a special meeting of the board during which each concurred in the termination of Mr. Pancich. The affidavits further state that at this meeting each member voted to elect a successor to Mr. Pancich. These affidavits are uncontradicted.

Subsequently Mr. Pancich brought suit against the Bank, its parent corporation and Mr. Reichel individually, alleging wrongful termination and breach of an implied covenant of good faith and fair dealing.

Initially defendants moved for summary judgment, which was denied by the District Court. Following denial of this motion, on December 7, 1987, defendants applied to this Court for a writ of supervisory control which was denied on two

3

grounds: (1) that the District Court's order denying summary judgment was interlocutory; and (2) that relators had an adequate remedy by appeal from the final judgment. A year later plaintiff moved for summary judgment on the issue of liability. Plaintiff's motion was granted by the District Court without explanation or accompanying memorandum. Defendants moved the lower court to reconsider its order or to certify to this Court pursuant to Rule 54(b), M.R.Civ.P. This motion also was summarily denied. The District Court then set a date for trial on the issue of damages.

I

Did the District Court err in granting summary judgment in favor of plaintiff on the issue of liability?

In our analysis, we begin by emphasizing that summary judgment is only appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Any inferences to be drawn from the factual record must be resolved in favor of the party opposing summary judgment. Simmons v. Jenkins (1988), 750 P.2d 1067, 45 St.Rep. 328.

Defendants contend that the court granted summary judgment based on an incorrect assumption that the denial of defendants' motion for summary judgment entitled plaintiff to summary judgment in his favor. Defendants' original motion for summary judgment was based upon the fact that First Bank West is a national bank governed by the National Bank Act, 12 U.S.C. § 21, et seq. Defendants' claimed that this statute preempts state law, and that pursuant to 12 U.S.C. § 24(5), a national banking association has the power to appoint a president and to dismiss an officer "at pleasure." The District Court denied defendant's motion by simply stating:

4

IT IS ORDERED that said motion is overruled and denied for the reason that a discharge is not ratifiable by the board after defendants executed the discharge of plaintiff and for the further conflicts in the admissible evidence revealed in defendants' Answers to Interrogatories #40, #50, #58, #70, #73, and #74, and others.

While we do not rule on this denial of summary judgment, we point out that it contains neither a factual nor a legal analysis. A year later plaintiff moved for summary judgment on the issue of liability. In this motion plaintiff contended that the court's denial of defendants' motion for summary judgment entitled plaintiff to summary judgment in his favor. Defendants contend that the court erroneously granted plaintiff's motion on this basis. While we cannot ascertain the court's reason for its decision, we do emphasize that summary judgment is not a decision on the merits. A denial of summary judgment is simply a decision that there are factual issues. As stated by one authority:

> [T]he denial of summary judgment does not preclude either party from raising at trial any of the issues dealt with on the motion. This is because the denial of summary judgment is not decision on the merits; it simply is a decision that there is a material factual issue to be tried.

10 Wright, Miller & Kane, Federal Practice and Procedure, § 2712 at p. 587. While the District Court's determination on defendants' motion for summary judgment was made a year earlier, and is not binding on the present motion, we point out that the District Court concluded that there were factual disputes. If there were material factual disputes, neither plaintiff nor defendant were entitled to summary judgment.

Defendants also contend that the court erroneously granted summary judgment since genuine issues of material

5

fact remain as to each of plaintiff's allegations, and as to defendants' affirmative defenses. In the petition for a writ of supervisory control, defendants list the following as issues involving factual determinations:

(a) Whether the court improperly removed from jury consideration the issue of whether there was a breach of an implied covenant of good faith and fair dealing when numerous affidavits described a fair and honest reason for the discharge from employment;

(b) Whether an alleged failure to meet the requirements of a federal preemption defense provides grounds for summary ruling that the implied covenant of good faith and fair dealing was breached or wrongful discharge occurred;

(c) Whether mere discharge from employment, without more, entitled respondent to summary judgment on the issue of liability for breach of implied covenant of good faith and fair dealing;

(d) Whether denial of relators' summary judgment motion, without more, entitled respondent to entry of summary judgment;

(e) Whether the Bank's parent corporation is subject to liability for breach of implied covenant, based on discharge of its subsidiary's employee, when respondent offered no proof that the corporate form was used as a subterfuge to perpetrate fraud, justify wrong, or defeat public convenience;

(f) Whether a director of a corporation is subject to personal liability when his acts were clearly taken in furtherance of corporate purpose.

In reviewing the applicable law, we emphasize the following standards. The covenant of good faith and fair dealing does not arise unless the employee has been given objective manifestations of job security. Dare v. Montana Petroleum Marketing Co. (1984), 212 Mont. 274, 687 P.2d 1015.

6

Even if the covenant is implied in the relationship, it is not breached if the employer had a fair and honest or legitimate business reason for the discharge. Barrett v. ASARCO, Inc. (Mont. 1988), 763 P.2d 27, 45 St.Rep. 1865.

In the present case defendants claim that Mr. Pancich was an at-will employee in that he had no objective manifestations of continued employment. They allege therefore that the covenant of good faith and fair dealing may not even apply to the termination. Additionally, the uncontradicted affidavits identify the OCC's determination that the bank was engaged in unsound banking practices as a fair and honest business reason for the discharge. The District Court had these affidavits for review prior to granting summary judgment. The affidavits clearly raise genuine issues of material fact. Further, the District Court had reviewed interrogatories and had expressly stated that there were conflicts in the evidence. It is clear that plaintiff established no basis from which the court could conclude that as a matter of law Mr. Pancich was wrongfully discharged and the covenant was breached. We conclude that genuine issues of material fact exist relative to the issues of wrongful discharge and breach of the covenant of good faith and fair dealing, precluding summary judgment.

Additionally, there remain genuine issues of material fact regarding defendants' affirmative defense that the Banking Act insulates them from liability. Through uncontested affidavits, defendants present evidence supporting their position that the termination of Mr. Pancich had prior authorization by the board. They also present facts indicating that the termination was ratified by the board, both at the special meeting of August 18 where a new president was elected, and again at the September 15 meeting where each member voted to accept Mr. Pancich's letter of resignation.

Although plaintiff contends that Mr. Reichel did not have the authority to discharge Mr. Pancich, the plaintiff failed to support this contention by affidavit or otherwise.

In response to Justice Sheehy's dissent, we note that while defendants do argue that cases interpreting the Banking Act would allow them this defense, we conclude that this is simply one more area in which issues of fact remain. We further point out that whether discharge "at pleasure" is available to defendants is only relevant to one of their defenses. Even if it were determined that the discharge was not authorized, or that ratification was not effective, this does not establish liability. It only eliminates that particular defense. The issue presently before this Court is only whether summary judgment against all defendants on the issue of liability was proper. The argument in regard to the Banking Act does not dispose of that issue.

We also agree with defendants' contention that plaintiff has failed to present facts from which it may be concluded that, as a matter of law, the parent corporation of First Bank West is liable for breach of the covenant of good faith and fair dealing, or that Mr. Reichel is personally liable in this suit. Meridian Minerals Co. v. Nicor Minerals, Inc. (1987), 228 Mont. 274, 742 P.2d 456, (parent corporation not a participant in action of subsidiary unless corporate form is used as subterfuge); Bottrell v. American Bank (1989), 773 P.2d 694, 46 St.Rep. 561, (actions of bank officers protected by corporate shield from personal liability). Genuine issues of material fact remain on these issues.

Because of the numerous genuine issues of material fact on each of the above issues, we conclude that the District Court's grant of summary judgment was manifestly incorrect.

8

## II

Is supervisory control appropriate when the District Court granted summary judgment in favor of Plaintiff despite the presence of numerous factual issues?

This Court discussed the role of supervisory control in State ex rel Whiteside v. District Court (1900), 24 Mont. 539, 562-63, 63 P. 395, 400, as follows:

> It has its own appropriate functions, and, without undertaking to define particularly what these functions are, we think one of them is to enable this court to control the course of litigation in the inferior courts where those courts are proceeding within their jurisdiction, but by a mistake of law, or willful disregard of it, are doing a gross injustice, and there is no appeal, or the remedy by appeal is inadequate. Under such circumstances, the case being exigent, no relief could be granted under the other powers of this Court, and a denial of a speedy remedy would be tantamount to a denial of justice. Cases may arise also where some relief could be granted under some one of the other original writs named, but such relief would not be complete and adequate because of some error which could not be corrected by means of the limited functions of the particular writ, while the supervisory power is unlimited in the means at our disposal for its appropriate exercise.

This Court may accept supervisory control pursuant to Rule 17, M.R.App.P., when due appeal is an inadequate remedy. In applying this standard we have repeatedly stated that a writ may issue to prevent extended and needless litigation:

> . . . This Court will nonetheless accept jurisdiction to protect First Bank from participating in needless ligigation, a purpose for which a writ of supervisory control is intended: ". . . it is in the nature of a summary appeal—a shortcut—to control the course of litigation in the trial court . . . and may be employed to prevent extended and needless litigation." (Citations omitted.)

9

First Bank v. Fourth Judicial Dist. Court (1987), 227 Mont. 515, 519, 737 P.2d 1132, 1134.

We also issued the writ in Continental Oil v. Elks Nat. Foundation (Mont. 1989), 767 P.2d 1324, 46 St.Rep. 121, to correct a partial summary judgment order, and in Great Western Sugar Co. v. District Court (1980), 188 Mont. 1, 778 P.2d. 272, the writ issued to prevent needless litigation where the district court had refused to dismiss a defendant whose affirmative defense clearly allowed dismissal.

Appellate review of an interlocutory order by the district court is not favored because of this Court's reluctance to intervene in district court decisions and because there normally is an adequate remedy by appeal, State ex rel. Guar. Ins. v. District Court (Mont. 1981), 634 P.2d 648, 38 St.Rep. 1682. However, issuance of an extraordinary writ is discretionary, 16 Wright, Miller and Kane, Federal Practice and Procedure, § 3932 at p. 187, and this Court has previously accepted review in an appropriate case. See, e.g., State ex rel. Burlington Northern v. Dist. Ct. (Mont. 1989), 779 P.2d 885, 46 St.Rep. 1625 (writ issued because an order placed a party at a significant disadvantage in litigating the merits of a case); Kuiper v. Dist. Court of Eighth Judicial Dist. (Mont. 1981), 632 P.2d 694, 38 St.Rep. 1288 (writ issued to determine whether district court properly granted a protective order); Jaap v. District Court of Eighth Judicial Dist. (Mont. 1981), 623 P.2d 1389, 38 St.Rep. 280 (writ issued where district court exceeded its jurisdiction by allowing defendant's attorney to privately interview plaintiff's physicians). A case by case analysis must be employed in determining whether supervisory control should be accepted. State ex rel. Deere and Co. v. District Court (1986), 224 Mont. 384, 730 P.2d 396.

The record here establishes genuine issues of material fact regarding the liability of each of three separate defendants. It is premature to allow a trial on damages as to any one or all three of the defendants under that circumstance. Such a trial on damages becomes needless and expensive litigation. The attendant publicity of such a trial on damages and its adverse effect upon defendants is not easily calculated. We conclude that the order of the District Court was was manifestly incorrect and created problems sufficiently burdensome to the defendants to require this Court to take supervisory control. We conclude that supervisory control is appropriate to prevent needless and potentially damaging litigation. We vacate the District Court's order of summary judgment and remand for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____
Justices

Honorable Henry Loble, Retired District Judge, sitting in place of Justice John C. Harrison

11

Justice R. C. McDonough dissenting.

I would deny the writ. Relators here have an adequate remedy by appeal.

_____
                    Justice

Justice John C. Sheehy, dissenting:

The first mistake of the majority is its unwarranted interference with the District Court's interlocutory order for which, if wrong, there is a complete and speedy remedy by appeal. The second mistake of the majority is, having determined to interfere, the members have failed to interpret properly the applicable law relating to the discharge of a bank officer. Had they properly interpreted the law, they had then discovered that there was no genuine issue of material fact before the District Court.

It should have piqued the interest of the majority that in all of the briefs filed by the banks, there is not a single whisper of contention that Pancich was an at-will employee.

It should further have piqued the interest of the majority that in all of the briefs filed by the banks, there is not a single reference to federal law or federal cases bearing on the discharge of a bank officer, although in this case the banks involved are national associations.

Had their interest been piqued, they should first have looked at the provisions of 12 U.S.C. § 24, which relates to the discharge of bank officers. The statute provides that a national bank has the power:

> FIFTH. To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill in their places. (Emphasis added.)

The effect of 12 U.S.C. § 24 was discussed in McWhorter v. First Interstate Bank (Or.App. 1986), 724 P.2d 877, 879, wherein it was contended that the president of a national

13

bank had authority to dismiss a bank officer. The Oregon court said:

> The difficulty with defendant's argument is that we are concerned here with the delegation of a specific statutory duty, not simply with the managerial powers that normally accompany a general conferral of authority in the articles or bylaws of a corporation. Section 24 (Fifth) explicitly confers the responsibility for the hiring and dismissal of officers on the board of directors. Other provisions of the national banking laws make it clear that Congress knows how to manifest its intent about what powers are exercisable only by the board and what powers may be exercised by subordinate entities. See, e.g. 12 U.S.C. § 24 (Seventh) ("board of directors or duly authorized officer or agents").
>
> . . .
>
> We consider that premise to be incorrect, because the authority to hire and fire the officers of national banks is not simply a matter of corporate organization; it is a matter which Congress has deemed sufficiently important to regulate by statute and to entrust to the highest decision making entity in the corporate structure . . .

In Mahoney v. Crocker Nat'l Bank (N.Dist.Cal, 1983), 571 F.Supp. 287, discharged national bank officers brought suit against the bank based on the federal Age Discrimination in Employment Act. The bank sought to interpose the defense that because it was a national bank, its bank officers served at pleasure under the National Banking Act, 12 U.S.C., section 24. The appeals court held that because the plaintiff bank officers had not been discharged by the bank's board of directions, nor by an officer empowered by the by-laws to discharge bank officers, the defense of at-will employment was not available to the bank, since the dismissal of the bank officers was not done in a manner authorized by

14

the National Banking Act, 12 U.S.C., section 24.  Mahoney, 571 F.Supp. at 290-291.

In this case, one member of the majority has concluded that because in Mahoney the bank sought to use the National Banking Act in defense, the provisions of the Act are available only to banks as a defense, and that plaintiffs cannot rely on those same provisions to prove an improper discharge.  On that basis the member of the majority refuses to acknowledge the right of a discharged bank officer to rely on the procedures established by Congress for the hiring and firing of bank officers in 12 U.S.C., section 24, saying the Act is only available to a bank as a matter of defense. There is no way for me to explain that rationale:  Clearly, it seems to me, while it is true that under the National Banking Act, a bank officer is an at-will employee, under the same Act, his dismissal can only be by the board of directors in concert, or by someone authorized in the by-laws to dismiss the bank officer.  Any other kind of dismissal is against law and gives rise to liability.

In this case, the discharge of Pancich was by John Reichel, and not by the board of directors.  Attempt was made by the bank to show that the board of directors ratified the discharge.  Under the cases, they are not helped by that attempt.  It is old law and undisputed to this date that the assent of the individual members of the board, acting separately and singly, and not when acting as a unit, is not the assent of the bank, and is not binding on the bank. First Nat. Bank v. Drake (Kan. 1886), 11 P. 445, 447.  In Wiskotoni v. Michigan Nat. Bank-West (6th Cir. 1983), 716, F.2d 378, 387, the federal court held that an attempt by the board of directors to ratify the president's action in terminating an officer did not satisfy the statutory requirement that officers of a national bank be dismissed by

15

an action of the bank's board of directors. Ratification therefore is impossible. The Oregon court recognized the authority of <u>Wiskotoni</u> and refused to recognize an attempted ratification of a discharge by the board of directors after the fact. McWhorter v. First Interstate Bank (Or.App. 1986), 724 P.2d 877, 879. In the light of those decisions and the plain statutory language of 12 U.S.C. § 24 (Fifth), the District Court was eminently correct in holding:

> IT IS ORDERED that said motion is overruled and denied for the reason that a discharge is not ratifiable by the board after defendants executed the discharge of plaintiff . . .

There is no legal requirement that a district court in ordering summary judgment should express reasons or give a legal analysis as referred to in the majority opinion. We have suggested that such be done but if the district court does not do so, this Court is not excused from its duty to examine the law to determine if the summary judgment is proper. In this case, an examination of the applicable law shows that the order of the district court was correct.

The legal situation in this case boils down to this: John Reichel, as the regional managing director of the western Montana region of First Bank System, or as a director of the bank, in discharging Robert M. Pancich from the presidency of First Bank West, Great Falls, acted completely against a Congressional statute. It is not relevant in this situation that First Bank West might otherwise have had good cause to discharge the president. If it had such cause, it could only act through its board of directors. Reichel plainly tortiously interfered with the contractual relation between Pancich and his bank. A violation of a federal statute with respect to discharge is certainly a breach of the implied covenant of good faith and fair dealing—if

16

expected compliance with federal statutes is not inherent in a national bank officer, what importance can we attach to mere personnel brochures upon which we have previously supported implied covenants? Public policy ordained by Congress through its national banking laws requires that an officer be discharged only by the board of directors of a national bank. When public policy has been violated in connection with a wrongful discharge, a cause of action arises. Keneally v. Orgain (1980), 186 Mont. 1, 5-6, 606 P.2d 127, 129.

Moreover, there is no basis for the contention that John Reichel has no personal liability in this matter. He is the person who violated the Congressional statute. Under the National Banking Act he had no authority to remove Pancich as a bank officer. The order of the District Court fixing liability for a wrongful discharge upon the defendant Reichel was eminently proper in this case.

There is further no basis to contend that a question of fact exists as to the liability of First Bank System. In discharging Pancich, Reichel was acting as the agent of First Bank System. A corporation is liable for the wrongful acts of its agents when the agents are acting in the course and scope of their employment. First Bank System is responsible for Reichel's wrongful acts.

The foregoing applicable law convinces me that there is no genuine issue of material fact as to the liability of the defendants and that the District Court properly ordered summary judgment on that point. Even if I were not so convinced, however, I would still not grant supervisory control because such action is a plain interference with the District Court proceedings from which there is complete, adequate and speedy remedy by appeal. The majority cites a number of cases in which we granted summary judgment but that

17

simply glosses over what is occurring here, a direct interloping into the district court process on improvident grounds. I am outraged at the effect on the District Court proceedings. The District Court, after granting partial summary judgment had fixed trial of the cause for September 29, 1989. This Court vacated that trial setting, acting through its majority. In their exorbitant worry over "needless and expensive litigation" and "attendant publicity" the majority here have made the district court trials more expensive and burdensome, and necessarily increased the expense of the litigation--quite needlessly, in view of the law. The same thing happened recently in State ex rel. Burlington Northern v. District Court (Mont. 1989), ___ P.2d ____, 46 St.Rep. 1625. There, an injured railroad worker lost his trial setting by the action of this Court. It is too late to rectify the loss of a trial setting in the case at bar but we should at least refuse supervisory control.

_____
                Justice


Justice William E. Hunt, Sr.:

    I concur in the dissent of Justice Sheehy.


_____
                Justice


18