No. 81-346

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

STATE OF MONTANA, ex rel.,
GUARANTEE INSURANCE COMPANY,

Relator,

vs.

DISTRICT COURT OF THE EIGHTH JUDICIAL
DISTRICT and HON. JOEL G. ROTH, and
BOYD MAHAFFEY and NANCY MAHAFFEY, d/b/a
MAHAFFEY TRUCKING,

Respondents.

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

Smith, Baillie & Walsh, Great Falls, Montana

For Respondents:

James, Gray & McCafferty, Great Falls, Montana

Submitted: September 17, 1981

Decided: OCT 14 1981

Filed: OCT 14 1981

*Thomas J. Kearney*
_____
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

This is an application for a writ of supervisory control to review and reverse a District Court order denying relator's objections to two interrogatories by plaintiff and directing relator to answer them within 30 days.

On January 11, 1979, the complaint in the underlying action was filed in the District Court of Cascade County. Plaintiff was relator's insured whose tractor and trailer were damaged in an automobile accident. Plaintiffs allege two claims against defendant seeking compensatory and punitive damages for alleged violations of the policy provisions and state insurance statutes in connection with settlement of the collision loss.

In the course of pretrial discovery plaintiffs served interrogatories on defendant pursuant to Rule 33, M.R.Civ.P. The interrogatories involved in the present controversy read as follows:

"INTERROGATORY NUMBER 2:

"Please state the number of total loss claims which were settled by your company between July 1, 1975, and July 1, 1978, by a direct payment from your company funds only in the amount of the insured value of the property less the salvage price and deductible, and where there was a direct payment of the salvage price from the salvage purchaser to the insured; and for each such settlement, please state:

"(a)   The date of the loss;

"(b)   The date of the payment from your company;

"(c)   The date of the payment from the salvage purchaser;

"(d)   The amount of the payment from your company funds;

"(e)   The amount of the payment from the salvage purchaser;

"(f)   Whether settlements in this matter were in accordance with standard company procedures or policy provisions; and if so, please identify any and all documentation which sets forth this standard company procedure and/or identify the policy provision involved."

- 2 -

"INTERROGATORY NUMBER 5:

"Please identify in a manner sufficient for a motion to produce, each and every writing of whatever kind and nature which in any way pertains to the information requested by Interrogatory Number 2 above, including (without need of setting forth the name of the insured involved) the claim number and policy number."

Plaintiff contended in the District Court that these interrogatories are directly relevant to the allegations stated in the plaintiffs' complaint, have not been shown in any manner to be unreasonably burdensome or vexatious, and are the only avenue by which the plaintiff can collect the information needed to prove a regular course of business conduct in violation of the Montana Insurance Code.

Defendant contended in the District Court that these two interrogatories are unduly annoying, oppressive, burdensome and expensive; that they are outside the scope of permissible discovery; and that they are not reasonably calculated to lead to the discovery of admissible evidence.

Defendant filed objections to these interrogatories, requested a hearing which was granted, and following the hearing the District Court entered an order dated and filed on May 26, 1981, that the information sought was discoverable information, denied relator's objections, and allowed relator 30 days in which to answer said interrogatories.

On August 6, 1981, relator filed in this Court its application for a writ of supervisory control requesting us to accept jurisdiction, review and reverse the District Court's order of May 26, and enter an order sustaining relator's objections, or in the alternative order a response to the application.

This Court then ordered a response by the plaintiff in the District Court action which has now been received, examined and considered.

We now refuse to accept jurisdiction of the petition for writ of supervisory control on the following grounds:

1. The application is untimely.

2. Relator has not exhausted his available remedies in the District Court.

3. Relator has an adequate remedy at law precluding review by extraordinary writ.

4. Policy considerations move our discretion to refuse jurisdiction.

The District Court's order denying relator's objections to the interrogatories and directing relator to answer the same within 30 days was issued on May 26, 1981. The petition for a writ of supervisory control was not filed with this Court until August 6, 1981. Thus the application was not made until 40 days after the time for answering interrogatories had expired. As such, the application for a writ of supervisory control is untimely and in violation of the District Court's order.

Neither has relator exhausted his remedies in the District Court. Relator has not applied for a protective order under Rule 26(c), M.R.Civ.P., limiting the scope of the interrogatories nor has it applied for an order under Rule 37(a)(4), M.R.Civ.P., assessing costs including attorney fees against the losing party should the District Court order be reversed on appeal. The District Court has inherent discretionary power to control discovery and that power is based upon the District Court's authority to control trial administration. Massaro v. Dunham (1979), ____Mont.____, 603 P.2d 249, 36 St.Rep. 2102. Control over pretrial discovery is best exercised by the District Court which is in a better position than this Court to supervise the day to day operations of pretrial discovery. The requirement of exhaustion of remedies in the District Court before seeking intervention by extraordinary writ from this Court will promote this objective and support the District Court's authority to control day by day trial administration.

Relator also has an adequate remedy at law precluding

review by extraordinary writ. The thrust of relator's contentions is that forcing it to answer the two interrogatories will subject them to great hardship and expense. In this day of computerized retrieval of claims records it is hard to understand the hardship involved. The expense involved can be assessed against the losing party at trial or upon appeal. Rule 37(a)(4), M.R.Civ.P.

Policy considerations also support our refusal to accept jurisdiction over this petition for an extraordinary writ. We acknowledge Kuiper v. District Court of Eighth Judicial Dist. (1981), ___Mont.___, 632 P.2d 694, 38 St.Rep. 1288, in which we accepted jurisdiction to review and reverse an order of the District Court granting a protective order against disclosure of trade secrets. That proceeding is distinguishable from the present case in that there the remedies before the District Court had been exhausted prior to applying to this Court for supervisory contol. We acknowledged that in one case nine years ago we granted a writ of supervisory control to review and reverse the scope of an interrogatory proposed by plaintiff in the District Court. State ex rel. Bankers Life & Casualty Co. v. Miller (1972), 160 Mont. 256, 502 P.2d 27. If this Court were to continue a policy of interjecting itself into an interlocutory review of rulings of the District Courts of this state concerning interrogatories and objections thereto, we would not only make it difficult for the District Court to control day to day trial administration but we would open a Pandora's Box of abuses. All that a financially superior insurance company would have to do to delay interminably or defeat a plaintiff's action for damages, no matter how meritorious, would be to file successive applications for review of every ruling of the District Court concerning interrogatories, depositions, requests for admissions, and other pretrial discovery thereby rendering it unlikely that plaintiff could ever get to trial within a reaso-

nable time. At the same time this would defeat one purpose and goal of the Montana Rules of Civil Procedure--a speedy, inexpensive, and just method of discovering the facts upon which each party's right of action depends. It might also literally bury this Court in a paper blizzard of applications for supervisory control to review rulings of the District Court on pretrial discovery.

Our holding here is consistent with federal court decisions on the subject. The policy of the federal appellate courts to refuse interlocutory review of pretrial discovery orders and the reasons therefor were expressed by Judge Aldisert in this manner:

> "Every interlocutory order involves, to some degree, a potential loss. That risk, however, must be balanced against the need for efficient federal judicial administration as evidenced by the Congressional prohibition of piecemeal appellate litigation. To accept the appellant's view is to invite the inundation of appellate dockets with what have heretofore been regarded as nonappealable matters. It would constitute the courts of appeals as second-stage motion courts reviewing pretrial applications of all non-party witnesses alleging some damage because of the litigation.
>
> "To accept the appellant's view is also to invite a geometrical increase in the already unacceptable delay between the date of filing and trial in the metropolitan district courts. The present case, filed over three years ago and now held in abeyance pending the outcome of this appeal, is a splendid example of the Homeric proportions that such litigation can assume. Our overburdened courts have little time or appetite for such protractions." Borden Company v. Sylk (3rd Cir. 1969), 410 F.2d 843.

For the foregoing reasons we decline jurisdiction in this cause and dismiss the petition for a writ of supervisory control.

_____
Chief Justice

- 6 -

We concur:

_Teon B. Daly_

_John Conway Harrison_

_Daniel J. Shea_

_Fred J. Weber_

_Frank B. Morrison_

_John C. Sheehy_
Justices