JUSTICE WEBER
delivered the Opinion of the Court.
This application for a writ of supervisory control arises from an order by the District Court of the Eighth Judicial District, Cascade *209 County, Montana. We accept jurisdiction of this application, and after receipt of briefs and oral argument, we order supervisory control.
Burlington Northern Railroad Company (Burlington Northern) was ordered by the District Court to answer certain interrogatories and was enjoined from any further discovery until compliance with the order. The District Court further ordered Burlington Northern to pay plaintiff’s attorney fees and costs in bringing the motion to compel discovery. We affirm in part and reverse in part.
This action arises from injuries received by Mr. Gilliland, an employee of Burlington Northern Railroad in Whitefish, Montana. On August 4, 1988, at approximately 2:50 a.m., while he was working as a utility foreman assisting a switch crew in switching operations, Mr. Gilliland was injured. A railroad car ran over him during a switching movement, causing a traumatic amputation of his right leg above the knee, and his right arm above the elbow.
On August 4, 1988, just hours after the accident, a senior claims representative of Burlington Northern, Mr. Dale Roos, interviewed the two crew members who were operating the train which hit Mr. Gilliland. Mr. Roos also interviewed the supervising yardmaster. There were no eye witnesses to the accident. Mr. Roos also photographed the accident site that same morning. This action was filed on August 6, 1988, pursuant to Federal Employer’s Liability Act.
On August 30, 1988, plaintiff served interrogatories, requests for production, notice of deposition, and deposition subpoena duces tecum on defendant. This discovery included requests for defendant’s entire investigative file, copies of Burlington Northern’s safety rules and films, photographs of the accident site, investigative reports, and witness statements.
On October 12, 1988, plaintiff deposed several witnesses, including Mr. Roos, and the Burlington Northern employees whose statements had been taken immediately after the accident. The subpoena duces tecum, which had been issued to Mr. Roos, requested that he bring to the deposition his entire investigative file. The subpoena duces tecum specifically requested a number of items, including the photos of the accident site, and the witness statements he had taken. However, Mr. Roos did not bring the photographs to the deposition, stating rather that he had turned them over to defendant’s lawyers. Mr. Roos did bring his file to the deposition, but the witness statements and a four-page list of safety materials with Mr. Roos’ handwritten notations, had been removed. At the deposition he did produce handwritten statements of the Burlington Northern employees.
*210 On October 17, 1988, defendant served interrogatories and requests for production on plaintiff. Plaintiff’s deposition by Burlington Northern was scheduled for November 10, 1988. During the late afternoon of November 9, plaintiff’s attorney called defendant to request that the photographs of the accident scene be brought to the deposition. Co-counsel of the attorney who would be taking plaintiff’s deposition agreed that the photos would be brought to the deposition.
On November 10 the plaintiff and counsel for both parties arrived for the deposition. Plaintiff’s counsel requested that plaintiff be allowed to view the photos prior to the commencement of the deposition. Counsel for Burlington Northern stated that he had not been informed that the prior viewing of the photographs was a condition to plaintiff’s deposition. Counsel for Burlington Northern agreed to allow plaintiff to view the photos during a recess or after the deposition had been concluded, but he refused to delay commencement of the deposition while the plaintiff viewed the 49 photographs in question. Plaintiff’s counsel refused to begin the deposition before the plaintiff had the opportunity to view the photographs of the accident site. As a result of this disagreement, plaintiff’s counsel would not allow the deposition to proceed. Counsel for Burlington Northern emphasized that he would subpoena plaintiff for a future deposition.
On the day following the aborted deposition plaintiff filed a motion to compel discovery and for sanctions. Plaintiff’s motion to compel requested that the court order production of defendant’s entire investigative file, disclosure of the identity of all experts consulted by defendant, copies of Burlington Northern safety rules and films, all photographs of the accident scene taken the morning of the injury, and all statements of crew members, employees, or witnesses. The motion included a request that defendant be prohibited from conducting any further discovery until ten days after compliance with the order, and also included a request for expenses incurred in bringing the motion to compel. On December 2, 1988, defendant filed a motion to compel discovery of answers to interrogatories and requests for production which had been served on plaintiff on October 17, 1988, but had not been answered. Defendant also requested a protective order regarding the identities of the non-witness experts, the witness statements obtained by Mr. Roos, the identity of Burlington Northern employees whose earnings were requested, and all privileged information contained in its file.
*211 On December 5, 1988, the court heard argument on these motions and ordered further briefing on whether defendant should be compelled to disclose identities of non-witness experts and witness statements. On February 10, 1989, the court issued an order compelling defendant to identify its non-witness experts and to disclose the witness statements taken by Mr. Roos. The court granted a partial protective order to defendant by ordering that certain employee earnings be disclosed, but keeping the employee identities confidential. While the court ordered that the photographs and catalog of safety files be produced, these items had already been produced by defendant on December 13, 1989. The court’s order also restrained defendant from pursuing any further discovery until ten days after it had complied with plaintiff’s discovery requests, and ordered defendant to pay $7,250 in attorney fees and $170 in costs to plaintiff. Defendant seeks relief from this order through a writ of supervisory control.
I
Is issuance of a writ of supervisory control appropriate regarding a motion to compel discovery?
Defendant contends that a writ of supervisory control should issue in the present case because the District Court has ordered production of privileged material. Defendant contends that because it asserted its right to withhold privileged work product it is now being prevented from conducting any discovery. It contends that if it is required to disclose material which is privileged then “the harm is complete and cannot be rectified by appeal.” Thus there is no adequate remedy.
A discovery order is interlocutory and normally not appealable, and this Court has expressed disfavor in granting a writ in the context of a discovery issue. State ex rel. Guar. Ins. v. District Court (Mont. 1981), [_Mont. ___,] 634 P.2d 648, 38 St.Rep. 1682.
However, this Court has issued a writ in two significant cases involving discovery issues. In Kuiper v. Dist. Court of Eighth Judicial Dist. (Mont. 1981), [__ Mont. _,] 632 P.2d 694, 38 St.Rep. 1288, a writ issued to determine whether the District Court had properly granted a protective order. Kuiper involved free speech issues and public policy considerations in that the plaintiff alleged Goodyear Tire Company had covered up a defect in a product. Kui *212 per also involved issues of whether certain material was work product.
In a second case, Jaap v. District Court of Eighth Judicial District (Mont. 1981), [191 Mont. 319,] 623 P.2d 1389, 38 St.Rep. 280, this Court granted a writ because the District Court had exceeded its jurisdiction by allowing defendant’s attorney to privately interview plaintiff’s physicians. In Jaap the method of discovery was incorrect.
In accepting jurisdiction to resolve a discovery dispute, the court in Nat. Farmers Un. Prop. & Cas. v. Denver D.C. (Colo. 1986), 718 P.2d 1044, 1046 stated:
“Initially we note that orders pertaining to discovery are interlocutory in character and generally are not reviewable in an original proceeding. However, we will exercise our original jurisdiction when an order will place a party at a significant disadvantage in litigating the merits of the case.”
Regarding the appropriateness of supervisory control, in Continental Oil v. Elks Nat. Foundation (Mont. 1989), [235 Mont. 438,] 767 P.2d 1324, 1326, 46 St.Rep. 121, 123, this Court stated:
Supervisory control is proper to control the course of litigation when the lower court has made a mistake of law or willfully disregarded the law so that a gross injustice is done and there is no adequate remedy by appeal; also, to prevent extended and needless litigation.” (Citation omitted.)
The present case involved discovery of potentially privileged material. The discoverability of the identity of non-witness experts presented an issue of first impression in Montana. The sanctions imposed on defendant are severe and exceed the authority of Rule 37, as will be discussed further. We conclude that the order would place the defendant at a significant disadvantage in litigating the merits of the case and therefore accept supervisory control.
II
Did the District Court err in ordering disclosure of the identity of non-witness experts?
Plaintiff’s first set of interrogatories included the following request:
“INTERROGATORYNO. 7: State the names and addresses of all experts you have retained or conferred with concerning this action or any facts or circumstances which are relevant to this action;
*213 Defendants objected to this interrogatory on the basis that it seeks the identity of experts not to be called at trial. Defendant contends that this information is not discoverable, basing this assertion on Rule 26(b)(4)(B), M.R.Civ.P., which provides:
“A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.”
Federal Rule 26(b)(4) was adopted in 1970 to standardize discovery of expert witnesses. Montana’s Rule 26(b)(4) is discovery of experts who will be called to testify at trial. Subdivision (B) deals with non-witness experts. Thus the rule itself treats the two classes differently. While identity is not mentioned in this rule, the Advisory Comments to the rule state: “As an ancillary procedure, a party may on a proper showing require the other party to name experts retained or specially employed . . . .” 48 F.R.D. 487, 504.
Defendant contends that if the identity of experts who have been retained but who will not be called to testify at trial must be disclosed, then these witnesses could be contacted by the adverse party, and forced to testify. Defendant cites the case of Ager v. Jane C. Stormont Hospital and Training, Etc. (10th Cir. 1980), 622 F.2d 496, 503, for the holding that the identity of a non-witness expert is discoverable only upon a showing of exceptional circumstances. The Ager court also stated that an in-camera inspection is appropriate to ■ initially determine the status of the expert. The Ager court based its holding on four policy considerations, as follows:
“. . . once the identities of retained or specially employed experts are disclosed, the protective provisions of the rule concerning facts known or opinions held by such experts are subverted. The expert may be contacted or his records obtained and information normally non-discoverable, under rule 26(b)(4)(B), revealed. Similarly, although perhaps rarer, the opponent may attempt to compel an expert retained or specially employed by an adverse party in anticipation of trial, but whom the adverse party does not intend to call, to testify at trial. Kaufman v. Edelstein, 539 F.2d 811 (2d Cir. 1976). The possibility also exists, although we do not suggest it would occur in this case, or that it would be proper, that a party may call his opponent to the stand and ask if certain experts were retained in *214 anticipation of trial, but not called as a witness, thereby leaving with the jury an inference that the retaining party is attempting to suppress adverse facts or opinions. Finally, we agree with Ager’s view that ‘[disclosure of the identities of [medical] consultative experts would inevitably lessen the number of candid opinions available as well as the number of consultants willing to even discuss a potential medical malpractice claim with counsel . . .’”
Ager, 622 F.2d at 503.
The Ager court further concluded that “[t]he party ‘seeking disclosure under Rule 26(b)(4)(B), carries a heavy burden’ in demonstrating the existence of exceptional circumstances,” citing Hoover v. United States Dept. of Interior, (5th Cir. 1980), 611 F.2d 1132, 1142 n. 13.
The holding in Ager accords with the statutory language of Rule 26(b)(4)(B). In analyzing the recent case of Kuster v. Harner (D. Minn. 1986), 109 F.R.D. 372, a case which followed the Ager holding, one commentator explained that not only the policy reasons enumerated in Ager support non-disclosure of identity under this rule, but the language of the rule itself indicates that identity is protected.
“Rule 26(b)(4) establishes a general rule and then carves out different standards for testifying and non-testifying experts. The general rule does not expressly address the disclosure of an expert’s identity. Instead, Rule 26 (b)(4) (A) (i) expressly mandates the disclosure of a testimonial expert’s identity. The fact that the drafters thought it necessary to treat the identity of a testimonial expert separately may suggest that the identity of a non-testimonial expert need not be revealed. It seems reasonable to apply this restrictive approach not only to the facts and opinions of a non-testimonial expert but also to the expert’s identity because when the Advisory Committee wanted an identity to be discovered, they provided for it as in Rule 26(b) (4) (A) (i).”
M. Tapken, “Kuster v. Harner: A New Interpretation of Federal Rule of Civil Procedure 26(b)(4)(B),” 33 South Dakota L.Rev. 352 (1988).
We adopt the holding in Ager because we agree with its rationale. There are no significant cases to the contrary, and the following cases demonstrate that the Ager case is the current prevailing view on whether the identity of a non-witness expert is discoverable. (See, e.g., Detwiler v. Gall, Landau and Young Const. Co. (1986), 42 Wash.App. 567, 712 P.2d 316; Kuster; In re Sinking of Barge *215 Ranger I (U.S.D.C. Texas 1981), 92 F.R.D. 486; In re Pizza Time Theatre Securities Litigation (N.D.Cal. 1986), 113 F.R.D. 94).
We hold that the identity of non-witness experts is discoverable under Rule 26(b)(4)(B), M.R.Civ.P., only upon a showing of exceptional circumstances. In the present case, plaintiff made no showing of need for this information. This portion of the District Court’s order is therefore reversed.
Ill
Did the District Court err in ordering disclosure of witness statements taken by the senior claims representative of the defendant?
Within hours after Mr. Gilliland’s accident, Mr. Dale Roos, the senior claims representative for Burlington Northern, interviewed the two crew members who were operating the train which hit Mr. Gilliland. The supervising yardmaster was also interviewed. One of the interrogatory questions at issue sought discovery of these interviews.
Defendant contends that this information is “work product” and is privileged, citing Rule 26(b)(3), M.R.Civ.P., which states in pertinent part:
“(3) Trial preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party’s representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.”
Defendant contends that these statements were taken by an agent of defendant and were taken in anticipation of litigation. Defendant contends that this information may only be discovered upon a showing of substantial need, and that the! substantial equivalent cannot be obtained without undue hardship.
Plaintiff contends that these statements were simply statements *216 taken in the regular course of business and are discoverable without any showing of need. He refers this Court to our holding in Cantrell v. Henderson (1986), 221 Mont. 201, 718 P.2d 318, in which this Court concluded that a statement made by a defendant to his insurance company, before suit was filed, was not taken in anticipation of litigation and was therefore not privileged.
We conclude that the holding in Cantrell controls the present issue, allowing discovery. The rules of civil procedure are premised upon a policy of liberal and broad discovery. We therefore begin with the premise that these statements are generally discoverable. The statements at issue were taken in the regular course of the railroad’s claims department business, just as in Cantrell the disputed statement was taken in the regular course of the insurer’s business. In the present case the contemporaneous statements, taken within 24 hours of the accident, are unique and non-duplicable and should be available to both parties. See Southern Railway Company v. Lanham (5th Cir. 1968), 403 F.2d 119; Stout v. Norfolk & W. Ry. Co. (U.S.D.C. Ohio 1981), 90 F.R.D. 160. The modern trend favors discovery of this type of information. For similar analyses, see Langdon v. Champion (Alaska 1988), 752 P.2d 999; Nat. Farmers Un. Prop, and Cas.; Henry Enterprises, Inc., v. Smith (1979), 225 Kan. 615, 592 P.2d 915.
The analysis of this issue does not end with this initial premise however, because no absolute rule can be formed to apply to every case. We agree with the court in Klaiber v. Orzel (App.1985), 148 Ariz. 337, 714 P.2d 830, that a balance must be sought which requires appropriate disclosure of facts, without allowing a party to build its case on the other party’s efforts. As the Klaiber court stated:
“Thus, the exercise of the trial court’s discretion in each case must involve striking a balance between ensuring that counsel for the requesting party is not permitted to build his case on the work done by his opponents and fostering sufficient disclosure to enable the ultimate determination of the issues to be based on a full development and presentation of the relevant facts. The first element requires a consideration of the efforts made by counsel to obtain the same or equivalent material. The second element requires a consideration of the nature of the material and the purpose for which it is sought.”
Klaiber, 714 P.2d at 834.
In reaching this conclusion, we do emphasize that the plaintiff here *217 has worked diligently to develop his case so that this statement does not apply in the present case.
While we begin with the premise that these witness statements are taken in the ordinary course of business and are discoverable, we recognize that in such statements there may very well be portions which are not discoverable because they constitute work product and are therefore privileged.
Rule 26(b)(3) precludes inquiry into information taken “in anticipation of litigation.” This standard stems from the theory that attorney “work product” is privileged, a concept first articulated in Hickman v. Taylor (1947), 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. This work product doctrine, incorporated into Rule 26(b)(3), gives a qualified immunity to materials prepared “in anticipation of litigation,” and nearly absolute immunity to the “mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party to the litigation.” Kuiper, 632 P.2d at 701.
If the present witness statements contain material which may be privileged, the burden is on Burlington Northern, the party opposing discovery, to make a motion to limit discovery and to make a showing that the material sought is privileged. If necessary, an in-camera inspection by the court is appropriate to determine whether certain portions of the material should be protected. Any material which reflects attorney thought processes is clearly not discoverable. As mentioned, a showing that information was taken in anticipation of litigation gives a qualified immunity.
We hold that the witness statements were taken in the ordinary course of business and are therefore discoverable. In the present case defendant has cited to the court no facts which would render these statements privileged. We affirm the District Court’s order of disclosure of these statements.
IV
Did the District Court err in enjoining defendant from any other discovery until it had complied with the court’s discovery order?
The hearing on plaintiff’s motion to compel discovery and for sanctions was held on December 5, 1988. The court issued its order on February 10, 1989. After ordering disclosure of the identity of non-witness experts, and disclosure of the witness statements, the District Court enjoined defendant from initiating any further discovery until ten days after compliance with the order. Plaintiff’s motion for *218 a protective order and to quash the subpoena duces tecum which had been served on him, compelling him to appear for a deposition, was granted. The court’s order specifically ordered that plaintiffs deposition could not be taken until ten days after defendant had fully complied with the discovery order. The court then set a trial date for September 1989.
Defendant urges that this injunction against discovery is both inappropriate and overly severe. Defendant contends that it did not refuse to comply with an order since no discovery order had been issued. Defendant also contends that the sanction is inappropriate because defendant’s opposition to the motion to compel was substantially justified. In the alternative, defendant urges that the sanction imposed was overly severe in relation to the alleged abuses.
Rule 37, M.R.Civ.P., authorizes sanctions for discovery abuses. Both an overview of Rule 37 and a close examination of the statutory language aids in our understanding of how this rule should be applied. Rule 37 of the Federal Rules of Civil Procedure was enacted because the discovery rules are not self-executing and the framers recognized the possibilities of abuse. Our Montana Rule 37 is identical to the federal rule. Rule 37 was enacted in 1938 and stood virtually unchanged until 1970 when it was substantially revised. The 1970 amendments were intended to encourage more frequent use of sanctions for abuse. Wright, Miller, Kane, Federal Practice and Procedure, § 2281, p. 756 (1970).
Rule 37, M.R.Civ.P., is divided into four subsections. The distinctions between each section must be recognized in analyzing the facts of the present case. Rule 37(a) provides that a party may apply for an order compelling discovery. If the motion is granted, the court shall award attorney fees and costs to the moving party, “unless the opposition to the motion was substantially justified.” This same rule applies to the party opposing the motion if the motion is denied. Rule 37(a)(4).
Rule 37(b) provides for sanctions for failure to comply with an order. It is not necessary that the failure be willful. It appears that a finding of willfulness is relevant only to the choice of sanction. Societe Internationale v. Rogers (1958), 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255. In conjunction, Rules 37(a) and (b) contemplate giving the party a second chance to comply with discovery requests before awarding sanctions.
Rule 37(d) authorizes sanctions for 3 specific failures: 1) failure to attend at one’s own deposition, 2) failure to serve answers to inter *219 rogatories; or 3) failure to serve a written response to a request for production. In the event of one of these failures, a court may issue sanctions, without first ordering the non-responding party to comply. No second chance is contemplated. It is important to note this distinction between Rule 37(b) and Rule 37(d). Under section (b) no sanctions are available without a previous court order; under section (d) no order is necessary, however, sanctions are only authorized for the three enumerated failures.
Montana has acknowledged this distinction in former cases. See First Bank (N.A.) — Billings v. Heidema (1986), 219 Mont. 373, 711 P.2d 1384 (affirming judgment in favor of bank entered by trial court pursuant to Rules 37(b) and (d) for borrower’s willful refusal to attend own deposition, refusal to produce documents, and ignoring court orders directing compliance); Dassori v. Roy Stanley Chevrolet Co. (1986), 224 Mont. 178, 728 P.2d 430, 43 St.Rep. 2113, (holding that a motion to compel is not required as a condition to sanctions under Rule 37(d), and affirming trial court’s dismissal of complaint as a sanction for failure to respond to interrogatories; Thibaudeau v. Uglum (1982), 201 Mont. 260, 653 P.2d 855, (refusing to instruct trial court on remand that it should award sanctions, noting that Rule 37(b) requires failure to comply with an order and there had been no order).
In the present case defendant urges that sanctions were not appropriate pursuant to Rule 37(b) because the defendant had not failed to comply with an order. We agree with defendant’s contention. We further conclude that Rule 37(d) does not authorize sanctions in the present case because defendant did not violate one of the express instances in which it may apply. Therefore, there was no provision within Rule 37 authorizing the sanction imposed in the present case.
Plaintiff contends that the language of Rule 37 need not be strictly adhered to in determining the appropriateness of the sanction, since the court has inherent power and broad discretion in imposing sanctions. We decline to endorse the doctrine of a court’s inherent power to award sanctions. Although some courts still resort to the use of inherent powers in assessing sanctions, it is argued that the inherent powers doctrine promotes inconsistency and uncertainty, creates a “randomly-enforced system,” and dilutes the effect of Rule 37. See A. Behar, “The Misuse of Inherent Powers When Imposing Sanctions for Discovery Abuse: the Exclusivity of Rule 37,” 9 Cordozo Rev. 1779 (1988). We agree with this rationale and *220 conclude that Rule 37 should be the source of authority in assessing sanctions for discovery abuse. Broad discretion is available to the trial court within the statutory language of this rule without reference to an inherent power theory.
Defendant contends that the sanction imposed was too severe in relation to the abuse, and we agree. The agent of defendant, Mr. Roos, did not bring the photographs of the accident site to his deposition on October 12, thus disobeying the subpoena duces tecum which had been issued to him on August 30, 1988. These photographs had still not been produced by November 12 at plaintiff’s deposition, although they had been listed in a request for production on August 30. Compounding this lack of responsiveness, the court was obviously incensed over defendant’s conduct regarding the disputed photographs at plaintiff’s deposition. Our review of the record however, reveals that there were no other significant discovery abuses by defendant. We note that by October 12, 1988, only two months after the accident, plaintiff had deposed seven of defendant’s employees, including the senior claim’s representative, Mr. Dale Roos, and the employees who were working the morning of the accident who gave a statement to Mr. Roos. Plaintiff had also received the handwritten statements of these crew members. On October 14, 1988, defendant sent responses to plaintiff’s interrogatories and requests for production. Aside from the material to which defendant interposed an objection, the answers were responsive. Supplemental responses were later sent to plaintiff. Thus within two and a half months from the date of injury, plaintiff had obtained most of the requested discovery.
Plaintiff has not been denied information; in fact, the amount of discovery accomplished by plaintiff in a short amount of time demonstrates that defendant has been cooperative in discovery. In contrast, nearly a year after the accident, plaintiff, the only witness to the accident, still has not been deposed by defendant. Prohibiting discovery is a severe sanction, compounded in this case by the setting of a September 1989 trial date. The record does not reveal any egregious conduct by defendant which would warrant the severe sanctions imposed in this case.
Justice Sheehy’s dissent suggests the prohibition on discovery was authorized as part of a protective order pursuant to Rule 26(c) so that our discussion of Rule 37 is not appropriate. We point out that a protective order under Rule 26(c) is authorized to protect a party *221 from annoyance, embarrassment, oppression or undue burden or expense. We conclude that none of these are present in this case.
We regret that experienced counsel were not able to resolve this issue between themselves through reasonable communication. While we understand that attorneys “in the pit” may react in an impulsive or instinctive manner, such disputes are best resolved between the attorneys. Unfortunately a minor dispute evolved into a significant court issue where telephone calls could have resolved the questions.
The portion of the District Court’s order which enjoined defendant from any further discovery until ten days after compliance with the order is therefore vacated. We also vacate the September 1989 trial date and order the court to reset a new trial date, allowing both parties adequate time to pursue discovery.
V
Did the District Court err in requiring defendant to pay plaintiff’s attorney fees and costs incurred in bringing the motion to compel?
The District Court order of February 10, 1989, ordered defendant to pay $7250 in attorney fees and $170 in costs which were incurred by plaintiff in bringing the motion to compel discovery.
Defendant argues that expenses may be awarded pursuant to Rule 37(a)(4) unless “the opposition to the motion was substantially justified.” Defendant contends that its opposition to disclosure of the identity of non-witness experts and its opposition to disclosure of the witness statements was substantially justified, as demonstrated by the fact that these issues were appealed to this Court. Defendant also contends that its opposition to disclosure of the earnings of certain Burlington Northern employees was substantially justified as demonstrated by the fact that the District Court granted a partial protective order on this issue, protecting the identities of the employees.
From the record, however, it is clear that defendant’s non-production of the photographs of the accident site at least partially motivated both the motion to compel, and the District Court’s order. These photographs were clearly discoverable and at no point did defendant dispute this. However, defendant was dilatory in producing the photographs, did not obey the subpoena duces tecum, and was uncooperative at plaintiff’s deposition by refusing to allow plaintiff to view the photos prior to being deposed. It is understandable that at this point, plaintiff’s counsel decided that a motion to compel dis *222 covery was necessary, and while defendant did not oppose plaintiff’s entitlement to these photos, and in fact did deliver the photographs on December 13, 1988 prior to the court’s order, we conclude that the motion to compel and the court’s order were largely in response to the fact that the photographs were not produced in a timely manner. Thus we conclude that the expenses were appropriately awarded pursuant to Rule 37(a)(4).
Defendants also contend that this award may not be affirmed because an award of expenses under Rule 37(a)(4) can only be made after a hearing on the issue, and no hearing was held in the present case.
Rule 37(a)(4) does not require a hearing but merely an opportunity for a hearing. The record does not contain a request for a hearing before the District Court on the part of the defendant. We affirm the award of attorney fees and costs.
CHIEF JUSTICE TURNAGE and JUSTICE HARRISON concur.