IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 97-014

_____

JARED PRESTON,                                  )
                                                )
         Plaintiff and Petitioner,              )        O P I N I O N
                                                )
                                                )            And
         v.                                     )
                                                )         O R D E R
THE MONTANA EIGHTEENTH JUDICIAL                 )
DISTRICT COURT, GALLATIN COUNTY,                )
and THE HONORABLE THOMAS A. OLSON,              )
PRESIDING JUDGE,                                )
                                                )
         Respondents.                           )

_____


        Petitioner Jared Preston, petitions this Court pursuant to Rule 17, M.R.App. P.,
to issue a writ of supervisory control and vacate the order of the Eighteenth Judicial
District Court, Gallatin County, limiting the scope of discovery.  We vacate the District
Court's order to the extent that it limits the scope of Preston's discovery.

        We consider the following issue and subissues in this Opinion and Order:

        1.  Is a writ of supervisory control appropriate in this case?

             a.  Did the District Court err in denying discovery of evidence of
substantially similar injuries caused by the same design defect in other product models
manufactured by the Defendant?

             b.  Did the District Court err in limiting discovery to the time period
beginning with the manufacture of the N12 model roofing nailer and ending with the
Plaintiff's injury?

                         Factual and Procedural History

        This request for a writ arises out of a products liability action in which Jared
Preston alleges defective design of the N12 model pneumatic roofing nailer manufactured
by Respondent Stanley-Bostich.  Jared was working as a roofer with his brother and co-
worker Jeremy Preston when the injury occurred.  Jared was laying out shingles on a
roof while Jeremy nailed the shingles in place using the N12 model nailer.  Jared was on
his knees and had bent over to retrieve a shingle blown out of place by the wind.  Jeremy
was standing behind Jared with the nailer in his hand.  As Jared straightened up, he

bumped the tip of the nailer causing it to discharge a nail into his head, causing him injury.

The complaint against Stanley-Bostich alleges design defect and alternative design, and requests punitive damages. Preston's claims are based upon the fact that, prior to the development of the N12 model nailer, Stanley-Bostich had designed, patented, manufactured, and marketed a safer "sequential-trip" trigger mechanism on most of its pneumatic nailers. The trigger mechanism on the N12 model nailer is known as a "contact-trip" mechanism, which is a spring loaded device on the tip of the nailer that engages when it is pressed against any surface. Once the trigger is depressed, the nailer will fire and continue to fire each time the tip comes into contact with an object.

Preston served Stanley-Bostich with discovery requests asking for information about the alternative design and information concerning injuries caused by the models not equipped with the alternative sequential-trip safety mechanism. Stanley-Bostich refused to provide any information pre-dating the manufacture of the N12, or any information concerning injuries caused by any model other than the N12.

Preston moved the District Court to compel discovery. The District Court granted the motion, but limited discovery to the N12 model nailer, and to the time period from the manufacture of the N12 to the date of Preston's injury. Preston requested reconsideration of the restrictions imposed on the discovery. The District Court declined to reconsider. Preston asks this Court to issue a writ of supervisory control vacating the restrictions ordered by the District Court and compelling Stanley-Bostich to answer the discovery requests. Stanley-Bostich filed a response in which it argued the substantive merits of the District Court's order but did not contest the procedural appropriateness of supervisory control in this case. In a March 18, 1997 order, we accepted original jurisdiction of the issue raised in Preston's application for writ.

Discussion

1. Is a writ of supervisory control appropriate in this case?

This Court has recently clarified the standard for determining whether to exercise supervisory control. Plumb v. Fourth Jud. Dist. Court (Mont. 1996), 927 P.2d 1011, 53 St.Rep. 1187. Prior to Plumb, there existed two lines of authority which set forth the standard for our exercise of supervisory control. The more commonly used standard was that " 'supervisory control is appropriate where the district court is proceeding under a mistake of law, and in so doing is causing a gross injustice.' " Plumb, 927 P.2d at

1014

(citations omitted).  This line of authority evolved from the decision in State ex rel.
Whiteside v. District Court (1900), 24 Mont. 539, 63 P. 395, in which the Court held
that one of the functions of supervisory control is to "enable this court to control the
course of litigation in the inferior courts where these courts are proceeding within the
jurisdiction, but by a mistake of law, or willful disregard of it, are doing a gross
injustice, and there is no appeal, or the remedy by appeal is inadequate."  Whiteside, 63
P. at 400.

A second line of authority followed our decision in State ex rel. Racicot v. District
Court (1990), 244 Mont. 521, 798 P.2d 1004, where we held that the exercise of
supervisory control was appropriate upon the satisfaction of three circumstances.  Plumb,
927 P.2d at 1015.  The Racicot decision was subsequently interpreted to mean that all
three circumstances must be present before supervisory control will be accepted.  Plumb,
927 P.2d at 1015.  In Plumb, we decided that there may be cases in which supervisory
control is appropriate but which do not meet all three circumstances.  Therefore, we held
that "to the extent that the Racicot decision suggests that all three elements must be
established before supervisory control is exercised, and to the extent that subsequent
decisions have applied the test in that fashion, they are reversed."  Plumb, 927 P.2d at
1015.  We therefore followed the Whiteside line of authority for determining when
supervisory control is appropriate and noted that "this Court has followed the practice of
proceeding on a case-by-case basis though we are careful not to substitute the power of
supervisory control for an appeal."  Plumb, 927 P.2d at 1015 (citing State ex rel. Reid
v. District Court (1953), 126 Mont. 489, 255 P.2d 693).

In Plumb, we held that the constitutionality of the statute in question was an
appropriate issue to decide by supervisory control because the petitioner's remedy of
appeal was inadequate and the denial of a speedy remedy by supervisory control would
be a denial of  justice.  We held that without the exercise of supervisory control "the
course of discovery will be affected, the cost of preparation and trial will be affected,
settlement by the parties will be rendered more difficult, and the value of any verdict will
be questionable, meaning additional time and expense for a resolution of this issue by
appeal and the inevitable subsequent litigation."  Plumb, 927 P.2d at 1016.

The present case involves a restriction on the discovery of information pertaining
to a products liability case.  This Court has, in prior decisions, addressed the

propriety
of supervisory control in the discovery context.

Where the exercise of supervisory control over discovery proceedings will thwart the purposes of the discovery rules contained in the Montana Rules of Civil Procedure and where the relator has an adequate remedy of appeal, this Court will not issue a writ. State ex rel. Guarantee Insurance Co. v. District Court (1981), 194 Mont. 64, 634 P.2d 648. In Guarantee Insurance we denied Guarantee's request for a writ of supervisory control to avoid defeating the policy of speedy, inexpensive and just methods of discovery, because its application for writ was untimely, because it failed to exhaust available remedies in the district court, and because it had an adequate remedy by way of appeal in that it could ask for expenses of producing the documents as part of the judgment or on appeal. In Guarantee Insurance the district court had entered an order denying the defendant's objections to interrogatories and directing it to comply with the discovery requests. Guarantee Insurance, 634 P.2d at 649. In discussing the policy considerations of accepting jurisdiction to review the discovery order, we held that allowing the defendant to contest the court's order directing it to answer the interrogatories would "open a Pandora's Box of abuses" of the discovery process. Guarantee Insurance, 634 P.2d at 651. We noted that accepting the writ in that case would defeat the purpose and goal of the Montana Rules of Civil Procedure to provide a speedy, inexpensive, and just method of discovering facts upon which each party's right of action depends. Guarantee Insurance, 634 P.2d at 651.

In State ex rel. Burlington Northern R.R. Co. v. District Court (1989), 239 Mont. 207, 211, 779 P.2d 885, 888, we recognized this Court's reluctance to grant writs in the context of discovery issues because of the interlocutory nature of a discovery order. Nonetheless, we noted the following two instances in which we had made an exception and had exercised supervisory control in discovery matters. B.N., 779 P.2d at 888.

In Kuiper v. District Court (1981), 193 Mont. 452, 632 P.2d 694 (Kuiper I), we issued a writ to determine whether the district court had properly granted a protective order in a products liability suit. The plaintiff had sought admissions from the defendant Goodyear Tire Company that certain documents in the plaintiff's possession were genuine. The court denied the plaintiff's request to compel the defendant to admit the genuineness of the documents and issued a protective order preventing the use of the documents on the basis that the documents fell within the protections of the attorney-client privilege and the work product rule. Kuiper I, 632 P.2d at 698. Because the protective order implicated the plaintiff's free speech rights we accepted jurisdiction of the writ and

ultimately reversed those parts of the protective order that prevented the use of documents not protected by the attorney-client privilege or the work product rule.

In a second case, Jaap v. District Court (1981), 191 Mont. 319, 623 P.2d 1389, this Court granted a writ because the district court had exceeded its authority by allowing defendant's attorney to privately interview plaintiff's physicians. In Jaap the district court's order was vacated because the method of discovery was not authorized by the Montana Rules of Civil Procedure.

Having reviewed the precedents of Kuiper I and Japp, the Court in B.N. addressed the district court's order compelling discovery of potentially privileged material. The district court had ordered the defendant to produce certain work product and had enjoined the defendant from engaging in further discovery until it complied with the discovery order. B.N., 779 P.2d at 887.

The defendant contended that if it were to disclose privileged material then " 'the harm is complete and cannot be rectified on appeal.' " B.N., 779 P.2d at 888. This Court agreed that the potential harm which would be caused by the district court's order could not be remedied by appeal and we held that the sanctions imposed on the defendant placed it at a significant disadvantage in litigating the merits of the case. We therefore exercised supervisory control and ultimately vacated that part of the district court's order enjoining the defendant from engaging in further discovery. B.N., 779 P.2d at 894.

Our recent decision in Plumb sanctions the exercise of supervisory control in order to prevent a litigant from being placed at a significant disadvantage and to prevent unwarranted expenses and delays in the ultimate resolution of the litigation. Plumb, 927 P.2d at 1016.

We hold that a writ of supervisory control is appropriate in the instant case because, as explained below, the District Court is proceeding under a mistake of law which does a gross injustice to Preston by placing him at a significant disadvantage in litigating his case. Under the circumstances presented, remedy by appeal would be inadequate.

The District Court's order restricts the scope of Preston's discovery to information about the N12 model nailer only, and to information on the N12 model nailer from the time of manufacture to the date of Preston's injury. Preston argues that the District Court is proceeding under a mistake of law in that information outside of the scope of the District Court's order is discoverable pursuant to Rule 26(b)(1), M.R.Civ.P., which provides:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . . It

is

      not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

      Preston's claims of personal injury are based on Stanley-Bostich's alleged liability for defective design of its N12 model nailer.  In particular, Preston is claiming that Stanley-Bostich is liable for its failure to implement a safer design for the nailer when Stanley-Bostich knew of the dangerous nature of the N12 model  nailer and where an alternative design existed.

      This Court has recognized a strong public policy in permitting broad discovery concerning defective and dangerous products to promote the public safety.  See Kuiper I, 632 P.2d at 702.  Other jurisdictions have also recognized a broad scope of discovery in products liability actions.  See, e.g., Schaap v. Executive Industries, Inc. (N. D. Ill. 1990), 130 F.R.D. 384, 386; Kramer v. Boeing Co. (D. Minn. 1989), 126 F.R.D. 690, 692.

      In determining whether the District Court has made a mistake of law in restricting discovery, we will examine the court's discovery restrictions separately.

      a.    Did the District Court err in denying discovery of evidence of substantially similar injuries caused by the same design defect in other product models manufactured by the Defendant?

      As previously stated, the District Court in this case limited discovery to injuries caused only by the N12 model nailer thereby excluding injuries caused by similar nailers with the same trigger mechanism.  Rule 26(b)(1), M.R.Civ.P., provides that any information "reasonably calculated to lead to the discovery of admissible evidence" is discoverable.  Additionally, this Court has recognized that evidence of other injuries caused by similar products is relevant and admissible.  See Kuiper v. Goodyear Tire & Rubber Co. (1984), 207 Mont. 37, 56, 673 P.2d 1208, 1219 (Kuiper II); Krueger v. General Motors Corp. (1989), 240 Mont. 266, 274, 783 P.2d 1340, 1346.  If evidence of other injuries is admissible then it must be discoverable as well, since any information tending to lead to admissible evidence is subject to discovery under Rule 26(b)(1), M.R.Civ.P.

      In Kuiper II, the plaintiff was injured by an exploding multi-piece wheel rim manufactured by the defendant.  The plaintiff introduced evidence of eighty-six injuries caused by the same type wheels and by other multi-piece wheels.  Kuiper II, 673 P.2d at 1212.  No evidence was introduced showing exactly how the other accidents occurred, nor the age or condition of the exploding wheels.  On appeal, we held that the

evidence
of other injuries was admissible so long as the plaintiff showed substantial similarity.  In
offering guidance to the district court on retrial concerning the question of whether the
evidence of other injuries and products was substantially similar so as to be admissible
we stated:

> A concerted effort should be made by that court to allow the admission of
> evidence of only those accidents where both the product and the
> circumstances surrounding the accident were similar to the case at bar.

Kuiper II, 673 P.2d at 1219.  We noted for the court's consideration that although we had
determined in a previous opinion that information on similar injuries was discoverable,
the rules of admissibility are different from the rules of discovery and, thus, district
courts must make an independent inquiry regarding the admissibility of similar injuries.
Kuiper II, 673 P.2d at 1218.

We stated further, in another decision, that the circumstances of other injuries need
not be identical to be admissible.  Krueger, 783 P.2d at 1346.  In Krueger, the plaintiff
removed the front drive line of a 1976 Chevrolet pickup equipped with a New Process
Model 203 four-wheel drive transfer case.  The vehicle rolled over the plaintiff leaving
him a quadriplegic.  Krueger, 783 P.2d at 1342.  On appeal, this Court approved the
admission of evidence of other accidents including one involving a Chrysler model and
one in which the rear drive line was removed.  The Court concluded that both incidents
demonstrated the same roll-away characteristic that distinguished the defective product
(the Chevrolet with the New Process Model 203 transfer case) from alternative designs.
Krueger, 783 P.2d at 1346.

Stanley-Bostich contends that these cases illustrate that the other models of nailers
about which Preston seeks information are not similar enough to the N12 model nailer
to withstand the "similar injury" standard.  Without necessarily agreeing with this
contention we note that the standards referred to in the above-mentioned cases govern
admissibility of evidence, not discovery of evidence.  As we stated above, discovery
requests are to be construed broadly in favor of disclosing any information tending to lead
to admissible evidence.  Whether that evidence is admissible is for the court to decide at
trial, not for Stanley-Bostich to determine at the discovery stage of proceedings.

In another case in which Stanley-Bostich was the defendant in a products liability
action concerning a model N16CT pneumatic nailer, and where Stanley-Bostich attempted
to limit discovery of other accidents, a United States district court stated:

> In the context of discovery of information relating to similar products, the defendant should not be the final arbiter of substantial similarity. Rule 26 provides that requests for information need only be calculated to lead to the discovery of admissible evidence. The standard for relevance under Rule 26 is less demanding than the standard for admissibility at trial [citation omitted].

Drabik v. Stanley-Bostich, Inc., No. 90-0322-CV-W-6 (W.D. Mo. June 18, 1992) (order compelling discovery).

A plaintiff in a products liability action must prove that the product was sold in a "defective condition unreasonably dangerous to a user. . . ." Section 27-1-719(2), MCA. Evidence of injuries caused by similar models is relevant to both the "defect" and the "danger." In the instant case, Preston is also suing for punitive damages. In order to prevail on his claim for punitive damages, he will have to prove that the defendant acted with indifference to the "high probability of injury to the plaintiff." See 27-1-221(2), MCA. Evidence of injuries caused by similar models is also relevant to this issue in that the existence of similar injuries tends to demonstrate the manufacturer's knowledge of the "high probability of injury."

Preston seeks discovery about various product models which utilize the same allegedly defectively designed contact-trip mechanism that caused Preston's injury in this case. Evidence concerning similar models is commonly held to be discoverable when the different models contain the same alleged design defect. See Krueger, 783 P.2d at 1346; Jackson v. Firestone Tire and Rubber Co. (5th Cir. 1986), 788 F.2d 1070, 1083; Schaap v. Executive Industries, Inc. (N.D. Ill. 1990), 130 F.R.D. 384, 387; Kramer v. Boeing Co. (D. Minn. 1989), 126 F.R.D. 690, 695. Because information of similar injuries caused by other models of nailers manufactured by Stanley-Bostich would be relevant to the issues of whether the design was unreasonably dangerous, whether Stanley-Bostich was aware of the danger, and whether Stanley-Bostich was aware of a viable, alternative design, we hold that it is reasonably calculated to lead to the discovery of admissible evidence under Rule 26(b)(1), M.R.Civ.P. Without information about models other than the N12 model, Preston is deprived of relevant evidence regarding models employing the alternative trigger design. The existence of an alternative design goes to the very heart of this products liability action. To preclude discovery of the alternative design in this manner would significantly disadvantage Preston's ability to litigate his claim.

We hold that the District Court made a mistake of law in restricting

discovery to
the N12 model nailer only and that this mistake of law will significantly disadvantage
Preston in litigating his claim as he is without the means to discover evidence that is not
only relevant, but crucial, to his theory of the case.

  b.  Did the District Court err in limiting discovery to the time period beginning with the manufacture of the N12 model roofing nailer and ending with the Plaintiff's injury?

  The District Court's time frame limitation prevents Preston from discovering evidence regarding the alternative design and evidence of similar injuries prior to Stanley-Bostich's manufacture of the N12 model nailer in 1983, or dated after Preston's injury on August 5, 1991.

  Preston argues that information as to similar injuries is reasonably calculated to lead to discovery of admissible evidence relating to unreasonably dangerous design, alternative design, and punitive damages. We agree. Preston argues that Stanley-Bostich designed the safer sequential-trip mechanism in the 1970s and made the decision to discontinue this alternative design in most of its main line nailers in 1973. The engineering and marketing decisions made in the 1970s are relevant to whether the contact-trip mechanism in the N12 model nailer was "unreasonably" dangerous. Furthermore, evidence of alternative designs is only admissible where the alternative design existed prior to, or concurrent with, the manufacture of the product in question. Krueger, 783 P.2d at 1345. Therefore, evidence of alternative designs available prior to the manufacture of the N12 model is not only relevant, but necessary, to Preston's products liability claim and, therefore, the District Court is clearly proceeding under a mistake of law in precluding discovery of alternative design evidence predating the manufacture of the N12 model.

  Evidence of prior injuries is also relevant to a punitive damage claim in that the plaintiff must show that the manufacturer had notice that its product was dangerous and caused injuries before it sold the product in question. In restricting discovery to injuries occurring after the manufacture date of the N12 model nailer, the court arbitrarily restricted information to injuries caused by only that nailer. The court's order, in effect, requires that the product be the "same" rather than merely "similar." We have already held that "similar injuries" includes injuries caused by similar products with the same design defect. In precluding discovery of facts occurring before the manufacture date of the N12 model nailer, the court impermissibly denied Preston access to information reasonably calculated to lead to discovery of admissible evidence on the issue of

punitive
damages.

Although evidence subsequent to the date of injury is not relevant to the alternative
design issue, it is relevant to the unreasonably dangerous design element of Preston's
case.  The fact that the same design defect continues to cause injuries is relevant to
establishing the dangerousness of the product.  See Jackson, 788 F.2d at 1084 (holding
that under a strict liability theory, the dangerousness of a product may be proved as of
any time prior to trial).

We hold that the District Court made a mistake of law in restricting discovery to
the time period from the date of manufacture of the N12 model nailer to the date of
Preston's injury.  If Preston is forced to proceed to trial without information which could
reasonably lead to the discovery of admissible evidence which is crucial to the proof of
his claim,  he will be greatly disadvantaged in the litigation of his case.

Allowing the District Court's discovery restrictions to stand in this case would not
only unfairly disadvantage Preston but would defeat the purpose of the Rules of Civil
Procedure in that it would require Preston to endure the time and expense of trial and an
appeal before obtaining discoverable material essential to his case.  We therefore vacate
that portion of the District Court's order that restricts discovery to injuries caused by the
N12 model nailer only and to injuries occurring between the date of manufacture of the
N12 model nailer and the date of Preston's injury.  We remand for further proceedings
consistent with this Opinion and Order.

DATED this 10th of April, 1997.

/S/  W. WILLIAM LEAPHART

We concur:

/S/  J. A.  TURNAGE
/S/  WILLIAM E. HUNT, SR.
/S/  JAMES C. NELSON
/S/  JIM REGNIER
/S/  KARLA M. GRAY
/S/  TERRY N. TRIEWEILER